IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

LARRY GOLDEN,
Plaintiff-Appellant,

v.

INTEL CORPORATION,
Defendant-Appellee.

---

Appeal from the United States District Court
for the Northern District of California
No. C-22-03828 NC, Judge Nathanael M. Cousins

---

**APPELLEE INTEL CORPORATION'S ANSWERING BRIEF AND
SUPPLEMENTAL APPENDIX**

---

WILLIAM FAULKNER (83385)
MATTHEW SCHECHTER (212003)
McMANIS FAULKNER
a Professional Corporation
50 W. San Fernando, 10th Floor
San Jose, CA 95113
(408) 279-8700

Attorneys for Defendant and Appellee,
INTEL CORPORATION

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 23-1257 |
| **Short Case Caption** | Golden v. Intel |
| **Filing Party/Entity** | Appellee, Intel Corporation |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/30/2023

Signature: /s/ Matthew Schechter

Name: Matthew Schechter

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Intel Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| McManis Faulkner<br>50 W. San Fernando St., 10th Fl., San Jose, CA | William Faulkner<br>McManis Faulkner | Matthew Schechter<br>McManis Faulkner |
| Tyler Atkinson<br>McManis Faulkner | Hilary Weddell<br>McManis Faulkner | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................7

STATEMENT OF RELATED CASES ..................................................11

INTRODUCTION ............................................................................12

JURISDICTIONAL STATEMENT .....................................................13

STATEMENT OF THE ISSUES..........................................................13

STATEMENT OF THE CASE.............................................................13

SUMMARY OF THE ARGUMENT ...................................................15

ARGUMENT ...................................................................................16

    I.    STANDARD OF REVIEW ...................................................16

        A.    Review Of An Order Granting A Motion To Dismiss For
              Failure To State A Claim. ........................................16

        B.    Review Of An Order Granting A Motion To Dismiss For
              Lack Of Standing. ...................................................17

    II.    THE DISTRICT COURT PROPERLY GRANTED APPELLEE'S
        MOTION TO DISMISS...................................................17

        A.    Golden's Complaint Failed To State A Claim For
              Infringement Or Unjust Enrichment. ........................20

        B.    Golden's Contentions In His Informal Brief As To
              Errors Made By The District Court Are Without Merit. ..........21

            1.    The Appellate Decision in *Golden v. Google* Does
                Not Apply to this Case ......................................22

            2.    The District Court Applied the Correct Law and
                Standards in Deciding Intel's Motion to Dismiss. ............24

        C.    Golden's Complaint Did Not State A Claim Under
               The Sherman Act or Clayton Act...............................29

III.  THE DISTRICT COURT CORRECTLY GRANTED THE
MOTION TO DISMISS WITHOUT LEAVE TO AMEND..............30

CONCLUSION ....................................................................................31

CERTIFICATE OF COMPLIANCE........................................................32

# TABLE OF AUTHORITIES

## Cases

*Advanced Video Techs. LLC v. HTC Corp.*
  879 F.3d 1314 (Fed. Cir. 2018) ...........................................................................17

*Allen v. City of Beverly Hills*
  911 F.2d 367 (9th Cir. 1990) ...............................................................................30

*Ascon Properties, Inc. v. Mobil Oil Co.*
  866 F.2d 1149 (9th Cir. 1989) .............................................................................31

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ........................................................................ 17, 18, 20, 27

*Associated General Contractors of California, Inc. v. California State
Council of Carpenters*
  459 U.S. 519 (1983) ................................................................................... 25, 26

*Bahn v. NME Hosps., Inc.*
  772 F.2d 1467 (9th Cir. 1985) .............................................................................27

*Barrett v. Belleque*
  544 F.3d 1060 (9th Cir. 2008) .............................................................................16

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................................17

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*
  429 U.S. 477 (1977) ............................................................................................27

*California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics*
  818 F.2d 1466 (9th Cir. 1987) .............................................................................30

*Clegg v. Cult Awareness Network*
  18 F.3d 752 (9th Cir. 1994) .................................................................................17

*Eminence Capital, LLC v. Aspeon, Inc.*
  316 F.3d 1048 (9th Cir. 2003) .............................................................................30

*Foman v. Davis*
   371 U.S. 178 (1962) ........................................................................31

*Golden v. Apple Inc.*
   819 F.App'x 930 (Fed. Cir. 2020) ............................................. 14, 20

*Golden v. Apple Inc., et al.*
   No. 6:19-cv-02557-DCC, 2020 WL 415896, at *2 (D.S.C. Jan. 27, 2020)…....19

*Golden v. Apple Inc.*
   Case No. 6:20-cv-02270-JD-KFM, 2021 WL 4260782
   (D.S.C. Sept. 20, 2021) ......................................................... 14, 19

*Golden v. Apple Inc., et al.*
   No. 6:20-CV-04353-JD-KFM, 2021 WL 5074739, at *2
   (D.S.C. Nov. 2, 2021) ..................................................... 18, 22, 24

*Golden v. Apple, Inc., et al. v. Google*
   2022 WL 4103285 (Fed. Cir. September 8, 2022)............... 12, 18, 21, 22, 23, 24

*Golden v. Google, LLC*
   Case No. 6:21-cv-00244-JD-KFM, 2021 WL 5083804
   (D.S.C. Nov. 2, 2021) ............................................................ 22, 23

*Golden v. Intel Corp.*
   Case No. 22-cv-03828-NC, -- F.Supp.3d --, 2022 WL 17735388
   (N.D. Cal. Nov. 22, 2022)......................................................15

*Golden v. United States*
   955 F.3d 981 (Fed. Cir. 2020) ..................................................19

*Golden v. United States*
   No 13-307C, 156 Fed.Cl. 623 (2021)............................................19

*Huster v. j2 Cloud Servs., Inc.*
   682 F.App'x 910 (Fed. Cir. 2017).............................................27

*In re Gilead Scis. Sec. Litig.*
   536 F.3d 1049 (9th Cir. 2008) ..................................................25

*James v. J2 Cloud Servs., LLC*
   887 F.3d 1368 (Fed. Cir. 2018) .......................................... 17, 26

*Juniper Networks, Inc. v. Shipley*
    643 F.3d 1346 (Fed. Cir. 2011) ..................................................... 18, 30

*Knievel v. ESPN*
    393 F.3d 1068 (9th Cir. 2005) ...................................................16

*K–Tech Telecomms., Inc. v. Time Warner Cable, Inc.*
    714 F.3d 1277 (Fed. Cir. 2013) ...................................................16

*Lopez v. Smith*
    203 F.3d 1122 (9th Cir. 2000) ...................................................25

*Lujan v. Defs. of Wildlife*
    (1992) 504 U.S. 555 ..................................................... 18, 25

*McBride v. Boughton*
    123 Cal.App.4th 379 (2004) ...................................................21

*Melchior v. New Line Productions, Inc.*
    106 Cal.App.4th 779 (2003) ...................................................21

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*
    540 F.3d 1049 (9th Cir.2008) ...................................................18

*Moss v. U.S. Secret Serv.*
    572 F.3d 962 (9th Cir. 2009) ...................................................25

*OIP Techs., Inc. v. Amazon.com, Inc.*
    788 F.3d 1359 (Fed. Cir. 2015) ...................................................16

*Power Analytics Corp. v. Operation Tech., Inc.*
    820 F.App'x 1005 (Fed. Cir. 2020) ...................................................27

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*
    768 F.3d 938 (9th Cir. 2014) ...................................................25

*Somers v. Apple, Inc.*
    729 F.3d 953 (9th Cir. 2013) ...................................................27

*Spokeo, Inc. v. Robins*
    578 U.S. 330 ...................................................18

*United States v. Corinthian Colleges*
    655 F.3d 984 (9th Cir. 2011) ...................................................16

*Warth v. Seldin*
422 U.S. 490 (1975) ................................................................ 17, 18

*Wuxi Multimedia Ltd. v. Koninklijke Philips Elecs., N.A.*
280 F.App'x 968 (Fed. Cir. 2008) ...........................................29

## **Statutes**

28 U.S.C. § 1295(a)(1) .............................................................13

28 U.S.C. § 1915 .....................................................................22

35 U.S.C. § 101 .......................................................................24

35 U.S.C. § 112 .......................................................................24

## **Rules**

Fed. R. Civ. P. 12(b)(1) ....................................... 13, 15, 25, 28

Fed. R. Civ. P. 12(b)(6) ............................................. 13, 15, 16

Fed. R. Civ. P. 15(a)(2) ...........................................................30

Federal Circuit Rule 32(b)(1) ..................................................32

Federal Circuit Rule 32(b)(3) ..................................................32

## **Other Authorities**

7,385,497 ('497 patent) ...........................................................15

8,106,752 ('752 patent) ...........................................................15

9,096,189 ('189 patent) ...........................................................15

9,589,439 ('439 patent) ...........................................................15

10,163,287 ('287 patent) .........................................................15

10,984,619 ('619 patent) .........................................................15

**STATEMENT OF RELATED CASES**

Pursuant to Federal Circuit Local Rules 28(a)(4) and 47.5, appellee Intel

Corporation hereby states that there has been no other appeal in or from the same

civil action or proceeding in the lower court was previously before this or any

other appellate court.


DATED: January 30, 2023                    McMANIS FAULKNER

                                           _/s/ Matthew Schechter_
                                           MATTHEW SCHECHTER

                                           Attorneys for Appellee,
                                           INTEL CORPORATION

## **INTRODUCTION**

Plaintiff and appellant, Larry Golden ("Golden" or "Appellant"), brought a complaint against defendant and appellee, Intel Corporation ("Intel"), alleging claims for patent infringement and antitrust violations, and seeking damages in the tens of billions of dollars. Intel moved to dismiss the complaint, contending that it failed to state a cause of action and that Golden lacked standing to bring his antitrust claims. After the District Court granted Intel's motion without leave to amend, Golden brought this appeal, arguing that the District Court applied incorrect law in deciding the motion, ignored relevant case law, and should have granted him leave to amend. Golden's contentions are without merit.

The District Court applied the correct law in determining whether Golden had set out a cause of cause of action and if he had standing to bring an antitrust claim. The District Court also correctly concluded that leave to amend would be futile given Golden's history of filing multiple complaints in other courts that were routinely dismissed for failure to state a claim, and that, given the facts and allegations presented here, any attempt at amendment would be futile.

Furthermore, Golden's contention that the District Court should have relied on a decision by this Court in *Golden v. Apple, Inc., et al. v. Google*, 2022 WL 4103285 (Fed. Cir. September 8, 2022), is misplaced. Golden misreads, and then

misapplies, the decision of this Court in that matter. It has no application to this case. The decision of the District Court to dismiss the complaint without leave to amend should be affirmed.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in dismissing Appellant's patent infringement and unjust enrichment claims for failure to state a claim (Fed. R. Civ. P. 12(b)(6));

2. Whether the District Court erred in dismissing Appellant's antitrust claims for lack of standing (Fed. R. Civ. P. 12(b)(1)); and

3. Whether the District Court erred in dismissing Appellant's complaint without leave to amend.

## STATEMENT OF THE CASE

Golden has filed and lost numerous patent-related cases and appeals concerning the same patents at issue in this matter, with courts finding his claims to lack merit. Those unsuccessful suits involved over a dozen private companies, and the federal government. When Golden then tried to sidestep his extensive history of failed patent claims by including claims for antitrust violations, one court, in its order dismissing the complaint, said: "[P]laintiff, who unsuccessfully

sought damages against many of the defendants in the court for patent infringement … appears to seek relief for the same infringing actions by dressing the case as asserting violations of the Sherman Act, [and] the Clayton Act….” *Golden v. Apple Inc.*, Case No. 6:20-cv-02270-JD-KFM, 2021 WL 4260782, at *3 (D.S.C. Sept. 20, 2021), *aff'd*, Case No. 21-2160, 2022 WL 986984 (4th Cir. March 31, 2022).

This Court, as well, in one of Golden's multiple appeals from orders dismissing his lawsuits at the District Court level, said as follows:

> The complaint itself offers only vague generalities …, but nowhere points us to any nonfrivolous allegations of infringement of any claim by any actual product made, used, or sold by any defendant.
>
> [¶]
>
> Although Golden appeals pro se and is therefore entitled to a certain leeway in interpreting his complaint, … the plaintiff's vague and conclusory allegations fail to state a claim for relief.

*Golden v. Apple Inc.*, 819 F.App'x 930, 931 (Fed. Cir. 2020) (internal quotation marks omitted), *cert. denied*, 141 S.Ct. 1067 (2021).

Golden now brings a new action on the same type of allegations against a new defendant – Intel – in a new jurisdiction – the Northern District of California – with the aim of obtaining a different result. Golden's complaint in this action, filed on June 28, 2022, alleges claims for patent infringement and antitrust. As with his previous attempts, Plaintiff seeks tens of billions of dollars in purported damages,

alleging an unclear theory involving his patents – 7,385,497 ('497 patent); 8,106,752 ('752 patent); 9,096,189 ('189 patent); 9,589,439 ('439 patent); 10,163,287 ('287 patent); 10,984,619 ('619 patent); and RE43,891 ('891 patent) – the same patents that are the subject of Golden's other unsuccessful lawsuits. After Intel brought a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the District Court, on November 22, 2022, entered an order dismissing the patent infringement and unjust enrichment claims for failure to state a claim, dismissing the antitrust claims for lack of standing, and denying leave to amend. *Golden v. Intel Corp.*, Case No. 22-cv-03828-NC, -- F.Supp.3d --, 2022 WL 17735388 (N.D. Cal. Nov. 22, 2022). Golden subsequently filed this appeal.

## SUMMARY OF THE ARGUMENT

The District Court's order dismissing Golden's complaint without leave to amend was correctly decided and should be affirmed. Dismissal without leave to amend was proper because (1) Golden's complaint did not make out a facially plausible cause of action for direct infringement, contributory infringement, or unjust enrichment; (2) Golden lacked standing to bring his antitrust claims under Article III or under Section 2 of the Sherman Act; (3) Golden has a history of unsuccessfully bringing similar claims against other defendants in other jurisdictions; and (4) given the circumstances, it was apparent leave to amend would be futile.

# ARGUMENT

## I.    STANDARD OF REVIEW

### A.    Review Of An Order Granting A Motion To Dismiss For Failure To State A Claim.

This Court "appl[ies] regional circuit law to the review of motions to dismiss." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (citing *K–Tech Telecomms., Inc. v. Time Warner Cable, Inc.,* 714 F.3d 1277, 1282 (Fed. Cir. 2013)).  "The Ninth Circuit reviews appeals of a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) de novo." *OIP Techs., Inc.*, 788 F.3d at 1362; *see also Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  Review in the Ninth Circuit "'is generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of judicial notice.'" *OIP Techs., Inc.*, 788 F.3d at 1362 (quoting *K–Tech Telecomms.*, 714 F.3d at 1282); *see also United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

"Factual allegations in the complaint are taken as true and all reasonable inferences are drawn in the plaintiff's favor." *Barrett v. Belleque*, 544 F.3d 1060, 1061 (9th Cir. 2008).  However, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot

reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

**B.** **Review Of An Order Granting A Motion To Dismiss For Lack Of Standing.**

"This court reviews de novo a district court's dismissal for lack of standing. Factual findings relevant to a lack of standing determination are reviewed for clear error." *Advanced Video Techs. LLC v. HTC Corp.*, 879 F.3d 1314, 1317 (Fed. Cir. 2018) (citations omitted). "'For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *James v. J2 Cloud Servs., LLC*, 887 F.3d 1368, 1372 (Fed. Cir. 2018) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

**II.** **THE DISTRICT COURT PROPERLY GRANTED APPELLEE'S MOTION TO DISMISS.**

In order for a claim seeking relief to be valid, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556)). The

plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal, supra*, 556 U.S. at 678. "'[W]hile the court assumes that the facts in a complaint are true, it is not required to indulge in unwarranted inferences in order to save a complaint from dismissal.'" *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1064-1065 (9th Cir.2008)).

In addition to setting out a valid cause of action, "'[w]here, as here, a case is at the pleading stage, the plaintiff must 'clearly … allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, *as revised* (May 24, 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Those elements are that the plaintiff has suffered an injury in fact that can be fairly traced to the defendant's conduct being challenged by the plaintiff and which is likely to be redressed by a favorable judicial decision. *Spokeo*, 578 U.S. at 338; *see also Lujan v. Defs. of Wildlife* (1992) 504 U.S. 555, 560-561.

Here, Golden has both failed to state any claim for relief that is plausible on its face, as well as to establish that he has standing to bring his antitrust claims. Golden's complaint addresses conduct that dates back to 2010 and repeats the same meritless and difficult to understand allegations that he has been making for many years in other cases. *See*, *e.g.*, *Golden v. Apple Inc., et al.*, No. 6:20-CV-04353-JD-KFM, 2021 WL 5074739, at *2 (D.S.C. Nov. 2, 2021) (dismissing

complaint as "frivolous"), *aff'd sub. nom.*, *Golden v. Apple Inc. v. Google*, Case No. 2022-1229, 2022 WL 4103285 (Fed. Cir. Sept. 8, 2022); *Golden v. Apple Inc.*, No. 6:20-CV-02270-JD-KFM, 2021 WL 4260782, at *3 (D.S.C. Sept. 20, 2021) (dismissing complaint as "frivolous"), *aff'd* Case No. 21-2160, 2022 WL 986984 (4th Cir. Mar. 31, 2022); *Golden v. Apple Inc., et al.*, No. 6:19-cv-02557-DCC, 2020 WL 415896, at *2 (D.S.C. Jan. 27, 2020) (dismissing case as duplicative), *aff'd*, Case No. 2020-1508, 819 Fed.Appx. 930, 931 (Fed. Cir. Sept. 3, 2020) (affirming dismissal "not on the basis of duplicity, but on the ground of frivolousness"), *cert. denied*, 141 S.Ct. 1067 (2021).

These are not the only cases Golden has brought and had dismissed at the pleading stage. His cases against the United States that concerned alleged infringement and federal civil rights violations were also dismissed. *See, e.g., Golden v. United States*, No 13-307C, 156 Fed.Cl. 623, 632 (2021) (dismissing case and stating, "[e]nough time and resources have been expended by the court and the Department of Justice dealing with these allegations."), *aff'd*, No. 2022-1196, 2022 WL 4103287 (Fed. Cir. Sept. 8, 2022); *Golden v. United States*, 955 F.3d 981, 983 (Fed. Cir. 2020) (affirming an order from the Court of Federal Claims that dismissed Golden's claims as the complaint "allege[d] a duplicative claim over which the court lacked jurisdiction, and … fail[ed] to state a claim upon which relief can be granted."), *cert. denied*, 141 S.Ct. 908 (2020).

Golden has also failed to show he has standing as to his antitrust claims, as the complaint does not allege a concrete injury, does not show how the injury is attributable to Intel, and does not show the alleged injury could be redressed if the matter resulted in a judgment for Golden. Furthermore, Golden also fails to establish the additional requirements for "antitrust standing" given that he does not allege that he was engaged in the same market as Intel or that he suffered an injury in the market in which Intel operates.

**A.**     **Golden's Complaint Failed To State A Claim For Infringement Or Unjust Enrichment.**

"Allegations of direct infringement are subject to the pleading standards established by" *Twombly* and *Iqbal*. *Golden v. Apple Inc., supra*, 819 F.App'x at 930-931. In applying the standard in *Twombly* and *Iqbal*, courts should first identify any conclusory allegations not entitled to the presumption of truth, and then examine whether the remaining allegations are sufficient to render the claim "plausible." *See Iqbal, supra*, 556 U.S. at 679-681.

Here, Golden's allegations are the same type of "unadorned, the-defendant-unlawfully-harmed-me" accusations rejected as insufficient in *Iqbal*. *Id*. at 678. Significantly, the complaint is almost entirely devoid of facts supporting the claims, or fails to lay out the required elements. Instead, Golden depends on conclusory allegations and formulaic recitations of the elements of his claims. (*See* Appellee's Supplemental Appendix ["SAppx"] at SAppx005.) As has long been

made clear by courts following the standards laid out in *Twombly* and *Iqbal*, the reliance on such conclusory facts and formulaic recitations fall far short of establishing a cause of action, much less one for patent infringement.

Furthermore, California does not recognize a cause of action for "unjust enrichment." In fact, "[u]njust enrichment is not a cause of action … or even a remedy, but rather 'a general principle, underlying various legal doctrines and remedies…. It is synonymous with restitution.'" *McBride v. Boughton*, 123 Cal.App.4th 379, 387 (2004) (quoting *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 793 (2003) (internal quotation marks and citation omitted)). As Golden has failed to state a claim for infringement, he necessarily cannot state a claim for unjust enrichment.

**B. Golden's Contentions In His Informal Brief As To Errors Made By The District Court Are Without Merit.**

Golden makes two primary arguments as to why the District Court erred in granting Intel's motion to dismiss. First, he claims that the District Court should have, but did not, consider the opinion of this Court in the *Golden* when it ruled on the appeal in *Golden v. Apple, et al. v. Google, LLC*, 2022 WL 4103285 (Fed. Cir. 2022) (hereinafter *Golden v. Apple/Google*). Second, he claims the District Court applied incorrect law in reaching its conclusion. Both arguments are misplaced.

1. <u>The Appellate Decision in *Golden v. Google* Does Not Apply to this Case</u>.

Golden, in item number 2 of his Informal Opening Brief, argues that the District Court erred when it "fail[ed] to consider the opinion of this Superior Court in *Golden v. Google* Case No. 2022-1267 where the Fed. Circuit acknowledges that the 'smartphone' of Google [included with the 'species' of the communication devices i.e., laptops, desktop PCs, and tablets used by Intel] has written support in the patents and was issued with the presumption of validity." (Appellant's Informal Brief, p. 1; *see also id.* at p. 2, item #5 ["The most important thing here is in Golden v. Google, Plaintiffs complaint and claim charts were not found to be facially frivolous by the Federal Circuit."]). Golden misstates and misapplies the decision in that case.

The question before this Court in *Golden v. Apple/Google, supra*, was simply whether, in two different *pro se* cases filed by Golden, the District of South Carolina was correct in summarily dismissing both complaints without service of process.[1] On appeal this Court affirmed the district court's decision as to the Apple case, but reversed as to the case against Google.

---

[1] In both cases, the district court acted under its "inherent authority to review the *pro se* complaint to ensure that subject matter jurisdiction exists and that a case is not frivolous, even if the pleading is not subject to the pre-screening provisions of 28 U.S.C. § 1915." *Golden v. Google, LLC*, Case No. 6:21-cv-00244-JD-KFM, 2021 WL 5083804, at *1 (D.S.C. Nov. 2, 2021); *see also Google v. Apple Inc., supra*, 2021 WL 5074739, at *1. In the Apple case, the district court "dismissed the complaint as frivolous without the issuance of service of process but declined to dismiss with prejudice[]" while in the Google case, the district court "dismissed

Contrary to what Golden infers in his brief, however, this Court did <u>not</u> "acknowledge[] that the 'smartphone' of Google … has written support in the patents and was issued with the presumption of validity." Rather, on appeal, this Court simply concluded that, in the Google case, Golden's complaint included "a detailed claim chart mapping features of an accused product … to independent claims from" three patents. *Golden v. Apple/Google, supra*, 2022 WL 4103285, at *2. Because Golden, via this particular chart, "made efforts to identify exactly how the accused products meet the limitations of his claims[,]" this Court remanded the Google case back to the district court and said that "the district court should allow the complaint to be filed and request service of process." *Id.* Notably, though, that decision "[did] not preclude subsequent motions to dismiss by the defendant for failure to state a claim or for summary judgment[, nor did it express any] … opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous." *Id.*

Simply put, just because this Court allowed a complaint to be filed against Google in the District of South Carolina, does not mean that any subsequent complaint filed by Golden that uses a claim chart is automatically sufficient. Indeed, as to the Apple case in that appeal, which also used a claim chart, this Court <u>affirmed</u> the District Court's dismissal of the complaint as frivolous and

the complaint with prejudice and without the issuance of service of process." *Golden v. Apple/Google*, 2022 WL 4103285, at *1.

agreed with the District Court that "the docketed complaint is nothing more than a list of patent claims and accused products manufactured by each defendant for each asserted patent." *Golden v. Apple/Google*, 2022 WL 4103285, at *2; *see also Google v. Apple, et al., supra*, 2021 WL 5074739, at *2 ("[Golden's] patent infringement claims in this action are subject to dismissal because [he] has failed to include factual allegations beyond the identities of the Defendants, reference to the alleged infringing devices, and the alleged infringed-upon patents.").

2.     The District Court Applied the Correct Law and Standards in Deciding Intel's Motion to Dismiss.

Golden also argues that the District Court applied the wrong law in deciding the motion to dismiss, stating:

> Instead of determining the sufficiency of Plaintiffs pleadings under 12(b)(6). The Trial Court decided to introduce an argument of 'invalid patent claims'. The Trial Court stated Plaintiff does not have 'a patent in Central Processing Units (CPUs), laptops, or any of the technology used by Intel ... the patents themselves confirm that he does not...' The Trial Court applied 35 U.S. Code § 101  (patentability), and 35 U.S. Code § 112 (specification-written description) to Plaintiffs case to justify dismissing Plaintiffs case under 12(b)(6).

(Appellant's Informal Brief, p. 2, Item #3; *see also id.* at p. 4.)  Golden is incorrect.

The District Court did not introduce any arguments regarding invalid patent claims.  (*See* SAppx002-009.)  Indeed, no reference to Sections 101 or 112 of Title 35 appear in the District Court's order granting the motion to dismiss (*id.*), and the sentence quoted by Golden is found in the "Background" section of the order.  (*Id.*

at SAppx003, lines 3-5.)  Rather, the District Court relied on the proper standards of review on a motion to dismiss, noting that it "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party" (*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)); need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" (*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)); and that a claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  SAppx004 at lines 2-4; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009); SAppx003-004. The District Court also recognized that if it did grant the motion to dismiss, it should grant leave to amend unless the pleading could not possibly be cured by the allegation of other facts.  SAppx004; *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

The District Court further acknowledged the ability of a party to challenge a plaintiff's standing under Federal Rule of Civil Procedure 12(b)(1), identifying the standards for Article III standing as set out in *Lujan v. Defs. of Wildlife,* 504 U.S. 555 (1992), as well as citing *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983), for the position that

the standing requirements for an antitrust claim are more limited than those for general Article III justiciability.  (*See* SAppx004.)

The District Court then applied those standards in determining that Intel's motion to dismiss should be granted.  As to Golden's alleged claims for direct infringement, the District Court pointed out that the complaint: relies on allegations that are conclusory and contain formulaic recitations of the elements of asserted claims; contains few facts about what occurred; and makes it nearly impossible to tell which patents Golden alleges are being infringed and how.  (*See* SAppx005.)

In terms of any claims for contributory infringement, the District Court found that Golden failed to allege any of the elements for a contributory infringement cause of action.  Golden, instead, relied on conclusory allegations of conspiracy, but did not allege the identities of any of Intel's co-conspirators, nor did he allege the selling of any device, knowledge, or actual infringement.  *See id.*

In order to have Article III standing, "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *James v. J2 Cloud Servs., LLC*, 887 F.3d 1368, 1372 (Fed. Cir. 2018) (internal quotation marks omitted).  "[T]he plaintiff must clearly … allege facts demonstrating each element

of standing" at the pleading stage. *Huster v. j2 Cloud Servs., Inc.*, 682 F.App'x 910, 914 (Fed. Cir. 2017) (internal quotation marks and citation omitted).

However, Article III standing alone is not enough for purposes of an antitrust claim. Thus, "to assert a cause of action under § 2 of the Sherman Act … the plaintiff <u>must also plead an antitrust injury</u>." *Power Analytics Corp. v. Operation Tech., Inc.*, 820 F.App'x 1005, 1014-1015 (Fed. Cir. 2020) (emphasis added). "The Ninth Circuit has held that antitrust injury requires (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent.'" *Id.* at 1019 (quoting *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013)); *see also Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977); Moreover, "the injured party [must] be a participant in the same market as the alleged malefactors." *Bahn v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985).

Here, the District Court correctly held that Golden lacked standing to bring his antitrust causes of action. (*See* SAppx007-008.) First, Golden's complaint did not allege a concrete injury, nor did it explain how such an injury is attributable to Intel or how it would be redressable if the matter proceeded in the District Court. Indeed, given Golden's prior filings in other cases, it is clear that he is unable to state a facially plausible claim. *See Iqbal, supra*, 556 U.S. at 678.

Second, Golden's complaint lacks any allegation that he was a participant in the same market as Intel, or that Golden suffered injury in the market in which Intel operates. Additionally, while Golden's complaint alleges damages that total tens of billions of dollars, the complaint lacks any explanation of how such damages are not based on mere speculation or whether they would be easy or complex to apportion. As noted by the District Court in its order granting the motion to dismiss, Golden repeatedly notes that he "believes" there to be a conspiracy but offers no allegations about the scope of the conspiracy or how it impacts him. (SAppx008.) Similarly, while Golden alleges that "Intel has excluded competitor and harmed competition through interrelated policies or practices" (Complaint ¶ 7, at SAppx012), he fails to identify what those practices are, and does not assert that he has been harmed by them or explain to what extent. (SAppx008.)

Ultimately, Golden's allegations of antitrust violations and injury are – like in his previous complaints – simply too vague, conclusory, and frivolous to give him standing to bring his antitrust claims. The District Court's conclusion that Golden failed to establish "antitrust standing" such as to grant the motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) was correct and should be affirmed on appeal.

**C.** **Golden's Complaint Did Not State A Claim Under The Sherman Act or Clayton Act.**

Although the District Court dismissed Golden's antitrust claims solely on the basis of lack of standing, those causes of action also fail as they did not set out a valid cause of action. As to the Sherman Act, the complaint lacks any facts that would support a plausible inference of a conspiracy to monopolize or a specific intent to monopolize, and does not include any non-conclusory factual allegations that would tend to show the existence of a monopoly, the willful acquisition or maintenance of that power, or any "causal antitrust injury." *See Wuxi Multimedia, Ltd. v. Koninklijke Philips Elecs., N.V.*, No. 04cv1136 DMS (BLM), 2006 WL 6667002, at *9 (S.D. Cal. Jan. 5, 2006), *aff'd sub nom.*, *Wuxi Multimedia Ltd. v. Koninklijke Philips Elecs., N.A.*, 280 F.App'x 968 (Fed. Cir. 2008).

Similarly, with respect to the Clayton Act, Golden's complaint does not articulate any facts to support a plausible claim that Intel engaged in anti-competitive behavior, but instead just relies on conclusory statements that purport to state the alleged anti-competitive behavior.

Neither the vague, conclusory, and nonsensical allegations in the complaint, or the mere repetition of the statutory language, are sufficient to make the required standard.

## III. THE DISTRICT COURT CORRECTLY GRANTED THE MOTION TO DISMISS WITHOUT LEAVE TO AMEND.

Under Ninth Circuit law, dismissal with prejudice is only appropriate when "it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003). "'Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint.'" *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1352 (Fed. Cir. 2011) (quoting *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir. 1990)).

The District Court's conclusion to deny Golden leave to amend was correct. (*See* SAppx008-009.) The District Court acknowledged that, under the Federal Rules of Civil Procedure, a plaintiff should be granted leave to amend unless any such amendment would be futile. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Indeed, the District Court even noted that if this was Golden's first attempt at bringing infringement claims, then it may have been logical to grant leave to amend in this matter.

"Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1987). In determining whether to grant

leave to amend, the court considers a variety of factors, including "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to [the] opposing party by virtue of allowance of the amendment, [and] futility of the amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

As discussed in Section II, *ante*, Golden has repeatedly attempted to allege the same frivolous claims that he has made in this case. There are no facts Golden can allege to support his claims, nor any facts that he can allege to establish standing to bring his antitrust claims. Because of this, allowing leave to amend is futile. The District Court's decision to dismiss the complaint without leave to amend was proper and should be affirmed by this Court. *See Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160-1061 (9th Cir. 1989).

## CONCLUSION

For the foregoing reasons, the District Court's order should be affirmed. Appellant's lawsuit was properly dismissed with prejudice.

DATED: January 30, 2023   McMANIS FAULKNER

        */s/ Matthew Schechter*
        MATTHEW SCHECHTER

        Attorney for Appellee,
        INTEL CORPORATION

# CERTIFICATE OF COMPLIANCE

I, Matthew Schechter, counsel for Appellee, Intel Corporation, hereby certify, pursuant to Federal Circuit Rule 32(b)(3), that this brief complies with the word limit of Federal Circuit Rule 32(b)(1) because, exclusive of material not required to be counted, according to Microsoft Word for Microsoft 365 MSO, the program used to generate this brief, this document contains 4,692 words.

DATED: January 30, 2023                    McMANIS FAULKNER

                                           */s/ Matthew Schechter*
                                           MATTHEW SCHECHTER

                                           Attorneys for Appellee,
                                           INTEL CORPORATION

# INDEX TO SUPPLEMENTAL APPENDIX

| Document | Page |
|---|---|
| Judgment Granting Defendant's Motion to Dismiss, dated November 22, 2022 | SAppx001 |
| Order Granting Motion to Dismiss, dated November 22, 2022 | SAppx002 |
| Complaint for Antitrust Law Violations and Patent Infringement (without exhibits), dated June 28, 2022 | SAppx010 |
| Docket Sheet for Case No. C-22-03828 NC at the United States District Court, Northern District of California | SAppx046 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARRY GOLDEN,

       Plaintiff,

    v.

INTEL CORPORATION,

       Defendant.

Case No. 22-cv-03828-NC

**JUDGMENT**

On November 22, 2022, the Court GRANTED Defendant's Motion to Dismiss. Accordingly, judgment is entered in favor of Defendant. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 22, 2022

NATHANAEL M. COUSINS
United States Magistrate Judge

1
2
3                          UNITED STATES DISTRICT COURT
4                        NORTHERN DISTRICT OF CALIFORNIA
5
6      LARRY GOLDEN,                              Case No. 22-cv-03828-NC
                    Plaintiff,
7
8           v.                                    **ORDER GRANTING MOTION TO
                                                  DISMISS**
9      INTEL CORPORATION,                         Re: ECF 7
                    Defendant.
10
11
12          Before the Court is Defendant Intel's Motion to Dismiss a Complaint including

13   patent infringement claims pursuant to Fed. R. Civ. P. 12(b)(6) and to dismiss antitrust

14   claims for lack of standing under Fed. R. Civ. P. 12(b)(1).  For the reasons discussed

15   below, the Motion to Dismiss is GRANTED.  Leave to amend is DENIED.

**I.      BACKGROUND**

16          This case involves seven different patents: 7,385,497 ('497 patent); 8,106,752 ('752

17   patent); 9,096,189 ('189 patent); 9,589,439 ('439 patent); 10,163,287 ('287 patent);

18   10,984,619 ('619 patent); and 43,891 ('891 patent).

19          Plaintiff owns the rights to "a family of patents concerning a device for detecting

20   chemical, radiological, and biological hazards." *Golden v. United States*, No. 13-307C,

21   Dkt. 249 (U.S. Ct. Fed. Claims, Nov. 10, 2021). These patents are formally entitled, "multi

22   sensor detection and lock disabling system" and "multi sensor detection, stall to stop and

23   lock disabling system." ECF 7-1, Atkinson Decl., ¶¶ 18-24, Exhs. Q through W (the

24   patents at issue). "The patents appear to involve technology that can be used to detect

25   explosives/radiation and then disable vehicles or other apparatuses wherein the

26   explosives/radiation are detected." *Golden v. Apple Inc.*, No. 20-cv-04353-JD-KFM, 2021

27   WL 5074739, at *1 (D.S.C. Nov. 2, 2021).  Plaintiff refers to these patents as "CMDC

28

*United States District Court*
*Northern District of California*

1   patents," referencing a phrase that appears in some of his patent claims: "communicating,

2   monitoring, detecting, and controlling." *See, e.g.*, ECF 7-1, Atkinson Decl., ¶ 22, Exh. U at

3   p. 26.  Although he insinuates otherwise, Golden does not plausibly allege he has a patent

4   in Central Processing Units (CPUs), laptops, or any of the technology used by Intel.  The

5   patents themselves confirm that he does not.  *See, e.g.* Compl. ¶¶ 10, 43; Golden patents,

6   ECF 7-1, Atkinson Decl., ¶¶ 18-24, Exhs. Q through W.

7        Golden alleges Intel "formed" a monopoly by producing "infringing" CPUs that

8   process instructions for his threat-detection devices.  Compl. ¶ 1.  Plaintiff alleges Intel

9   engages in "exclusionary conduct" that "raises prices paid by consumers for Plaintiff's . . .

10  laptops, desktop PCs, cell phones, and stall, stop, and vehicle slowdown systems." *Id.* at ¶

11  2.  Intel's "contributory infringement commence from the manufacture of the patented

12  CPUs . . . ." *Id.* at ¶ 6 (quotation marks, emphasis, and ellipsis removed from original text).

13       Additionally, Golden alleges that Intel engages in retaliation against computer

14  makers if they do business with non-Intel suppliers by withholding benefits from them. *Id.*

15  ¶ 9.  Additionally, he alleges that "Intel has excluded competitors and harmed competition

16  through interrelated policies and practices." *Id.* ¶ 7.  Finally, Golden asserts that "Intel

17  continues to condition benefits to computer makers in exchange for their promise to buy

18  chips from Intel exclusively or to refuse to buy chips from others." *Id.* ¶ 8.

19  **II.    LEGAL STANDARD**

20       A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

21  sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To

22  survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

23  true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

24  662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When

25  reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the

26  complaint and draw all reasonable inferences in favor of the non-moving party." *Retail*

27  *Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir.

28  2014).  A court, however, need not accept as true "allegations that are merely conclusory,

United States District Court
Northern District of California

2

1    unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs.*

2    *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows

3    the court to draw the reasonable inference that the defendant is liable for the misconduct

4    alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted

5    unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v.*

6    *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

7         Because Article III standing pertains to a court's subject matter jurisdiction, it is

8    proper to challenge it as part of a motion to dismiss pursuant to Fed. R. Civ. P 12(b)(1).

9    *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). To have Article III standing, Plaintiff

10   must establish (1) an actual, concrete injury, (2) fairly traceable to the defendant, and (3)

11   that it is likely the injury will be redressed by a favorable decision. *Lujan v. Defs. of*

12   *Wildlife* 504 U.S. 555, 560–61 (1992).

13        With respect to antitrust claims under the Sherman Act, to enforce Section 2 a

14   plaintiff must satisfy the standing requirements of Section 4 of the Clayton Act. *Cyntegra,*

15   *Inc. v. Idexx Lab'ys, Inc.*, 520 F. Supp. 2d 1199, 1208-1210 (C.D. Cal. 2007), *aff'd*, 322 F.

16   App'x 569 (9th Cir. 2009). Standing under the Clayton Act is even more limited than that

17   required for Article III justiciability. *See Associated General Contractors of California,*

18   *Inc. v. California State Council of Carpenters*, 459 U.S. 519, 529-535 (1983).

19         To evaluate antitrust standing, the Supreme Court has identified a number of

20   relevant factors: (1) the nature of the plaintiff's alleged injury (whether it is the type the

21   antitrust laws were intended to forestall); (2) the risk of duplicative recovery; (3) the

22   directness of the injury; (4) the speculative measure of damages; and (5) whether damages

23   would be complex to apportion. *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190

24   F.3d 1051, 1055 (9th Cir. 1999) (internal citations omitted)*; Bubar v. Ampco Foods, Inc.,*

25   752 F.2d 445, 449 (9th Cir.1985).

26

27

28

United States District Court
Northern District of California

3

III.     DISCUSSION

    A.     Patent Infringement

       Golden attempts to allege both direct infringement, Compl. ¶¶ 21, 77 and contributory infringement on the part of Intel.  *Id.* at ¶¶ 76-83.  Neither of these attempts are successful.

    "Allegations of direct infringement are subject to the pleading standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Golden v. Apple Inc.*, 819 F. App'x 930, 930-931 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 1067.  Here, Golden's complaint contains very few facts about what allegedly occurred, when, and by whom.  The allegations against Intel are conclusory and contain formulaic recitations of the elements of asserted claims.  It is nearly impossible to tell which patents he alleges are being infringed and how.  As has been the case in past litigation, Golden has "failed to include factual allegations beyond the identities of the defendants, reference to the alleged infringing devices, and the alleged infringed-upon patents." *See Golden v. Apple Inc.*, No. 20-cv-04353-JD-KFM, 2021 WL 5074739, at *2 (D.S.C. Nov. 2, 2021), *aff'd*, No. 2022-1229, 2022 WL 4103285 (Fed. Cir. Sept. 8, 2022) (noting same).

    To the extent that Golden accuses Intel of contributory infringement, he has also failed to state a claim.  The elements of a claim for contributory infringement, under the Patent Act, are: (1) selling a device capable of infringing the patent, which is not suitable for substantial non-infringing use, (2) with knowledge that the infringing device was especially adapted for use in an infringement of such patent, and (3) actual infringement by another.  *AntiCancer, Inc. v. Fujifilm Med. Sys. U.S.A., Inc.,* 745 F. Supp. 2d 1165, 1170 (S.D. Cal. 2010).  Golden has not alleged any of those elements.  He accuses Intel of conspiracy with other actors but does not allege the selling of any device, knowledge, or actual infringement.  Nor does he allege the identities of any of Intel's co-conspirators.  This type of conclusory accusation is insufficient under Fed. R. Civ. P. 12(b)(6).

    Although not dispositive, several other Courts have held that virtually the same patent

United States District Court<br>Northern District of California

4

claims at issue here are frivolous. *Golden v. Google*, LLC, No. 21-cv-00244-JD-KFM, 2021 WL 5083804 (D.S.C. Nov. 2, 2021) (dismissing complaint as "frivolous"), C/A No. 21-2318, 2021 WL 8566191 (4th Cir. Dec. 7, 2021) (dismissing appeal); *Golden v. Apple Inc.*, No. 20-cv-04353-JD-KFM, 2021 WL 5074739 (D.S.C. Nov. 2, 2021) (dismissing complaint as "frivolous"); *Golden v. Apple Inc.*, No. 20-cv-02270-JD-KFM, 2021 WL 4260782 (D.S.C. Sept. 20, 2021) (dismissing complaint as "frivolous"), dismissal aff'd C/A No. 21-2160, 2022 WL 986984 (4th Cir. Mar. 31, 2022); *Golden v. Apple Inc.*, et al., C/A No. 19-cv-02557-DCC, 2020 WL 415896 (D.S.C. Jan. 27, 2020) (dismissing case as duplicative); dismissal aff'd C/A No. 20-1508, 2020 WL 5240656, 819 Fed.Appx. 930 (Fed. Cir. Sept. 3, 2020) (affirming dismissal "not on the basis of duplicity, but on the ground of frivolousness"). Golden here attempts to bring against Intel the same claims that have previously been dismissed against Google, Apple, and others.

### B.    Unjust Enrichment

Golden further alleges unjust enrichment. Compl. ¶¶ 23-33. Under California law, "[u]njust enrichment" itself is "not a cause of action ... or even a remedy, but rather a general principle, underlying various legal doctrines and remedies"; it is "synonymous with restitution." *See McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (internal quotation and citation omitted). Because the Court concludes that Golden has not stated a claim for either direct or contributory patent infringement, he cannot state a claim for unjust enrichment.

### C.    Antitrust

Next, Golden brings several[1] antitrust claims against Intel stemming from "competitor collaborations, conspiracy to restrain trade, and the illegal formation or maintenance of a monopoly, which likely resulted from a secret conspiracy and the anticompetitive practices recognized by this Court." Compl. at 1.

---

[1] Because Golden neither breaks down his allegations down into counts, nor provides a numbering system, it is challenging to say exactly how many counts are at issue. Suffice to say, the antitrust accusations are brought up in different contexts throughout the complaint. In all cases, Golden lacks standing.

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    A preliminary inquiry is whether Golden has standing to bring those claims.  The

2    Court concludes that he does not have standing either under Article III or under Section 2

3    of the Sherman Act.

4    First, for a plaintiff to have Article III standing, he must establish (1) an actual,

5    concrete injury, (2) fairly traceable to the defendant, and (3) that it is likely the injury will

6    be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife* 504 U.S. 555, 560–61

7    (1992).  Here, Plaintiff cannot meet this requirement because he does not allege any

8    concrete injury to himself or explain how that injury would be redressable.

9    With respect to the Sherman Act, to enforce Section 2, as Plaintiff seeks to, a

10   plaintiff must satisfy the standing requirements of Section 4 of the Clayton Act.  *Cyntegra,*

11   *Inc. v. Idexx Lab'ys, Inc.*, 520 F. Supp. 2d 1199, 1208-1210 (C.D. Cal. 2007), aff'd, 322 F.

12   App'x 569 (9th Cir. 2009).  Standing under the Clayton Act is even more limited than that

13   required for Article III justiciability.  *See Associated General Contractors of California,*

14   *Inc. v. California State Council of Carpenters*, 459 U.S. 519, 529-535 (1983).  To evaluate

15   antitrust standing, the Supreme Court has identified a number of relevant factors: (1) the

16   nature of the plaintiff's alleged injury (whether it is the type the antitrust laws were

17   intended to forestall); (2) the risk of duplicative recovery; (3) the directness of the injury;

18   (4) the speculative measure of damages; and, (5) whether damages would be complex to

19   apportion.  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1055 (9th

20   Cir. 1999) (internal citations omitted)*; Bubar v. Ampco Foods, Inc., 752 F.2d 445, 449*

21   (9th Cir.1985)).

22   To establish antitrust injury, a plaintiff must show that he suffered an "injury of the

23   type the antitrust laws were intended to prevent and that flows from that which makes

24   defendants' acts unlawful." *American Ad Mgmt.*, 190 F.3d at 1055 (quoting *Atl. Richfield*

25   *Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)). Moreover, "the injured party [must]

26   be a participant in the same market as the alleged malefactors." *Bahn v. NME Hosps., Inc.*,

27   772 F.2d 1467, 1470 (9th Cir. 1985); *Am. Ad Mgmt.*, 190 F.3d at 1057 ("Parties whose

28   injuries, though flowing from that which makes the defendant's conduct unlawful, are

6

1   experienced in another market do not suffer antitrust injury.").

2   Here, Golden has not alleged that he is a participant in the same market as Intel, let

3   alone that he suffered injury in the market in which Intel operates. Additionally, he has not

4   offered any explanation of how alleged damages of tens of billions of dollars are non-

5   speculative or easy to apportion. Indeed, Golden repeatedly notes that he "believes" there

6   to be a conspiracy but offers no allegations about the scope of the conspiracy or how it

7   impacts him. As one further example, Golden alleges that "Intel has excluded competitor

8   and harmed competition through interrelated policies or practices." Compl. ¶ 7. But he

9   neither identifies what those practices are, nor does he assert that he has been harmed by

10   them or explain to what extent.

11   Accordingly, Golden has no standing to bring antitrust claims against Intel and the

12   Motion to Dismiss is GRANTED.

### D.   Leave to Amend

14   Leave to amend should be freely granted unless amendment would be futile. Fed.

15   R. Civ. P. 15. Having carefully considered the record, the Court concludes that leave to

16   amend would be futile. With respect to the patent infringement claims, Golden offers

17   nothing other than conclusory allegations. Nonetheless, were this Golden's first attempt to

18   bring such allegations forward, the Court might be inclined to provide an opportunity for

19   him to expand. But Golden has had multiple suits, with nearly identical allegations

20   dismissed as frivolous. *Golden v. Google, LLC*, No. 21-cv-00244-JD-KFM, 2021 WL

21   5083804 (D.S.C. Nov. 2, 2021) (dismissing complaint as "frivolous"), C/A No. 21-2318,

22   2021 WL 8566191 (4th Cir. Dec. 7, 2021) (dismissing appeal); *Golden v. Apple Inc*., No.

23   20-cv-04353-JD-KFM, 2021 WL 5074739 (D.S.C. Nov. 2, 2021)(dismissing complaint as

24   "frivolous"); *Golden v. Apple Inc*., No. 20-cv-02270-JD-KFM, 2021 WL 4260782 (D.S.C.

25   Sept. 20, 2021) (dismissing complaint as "frivolous"), dismissal *aff'd* C/A No. 21-2160,

26   2022 WL 986984 (4th Cir. Mar. 31, 2022); *Golden v. Apple Inc*., et al., C/A No. 19-cv-

27   02557-DCC, 2020 WL 415896 (D.S.C. Jan. 27, 2020) (dismissing case as duplicative);

28   dismissal aff'd C/A No. 20-1508, 2020 WL 5240656, 819 Fed.Appx. 930 (Fed. Cir. Sept.

United States District Court
Northern District of California

7

1  3, 2020) (affirming dismissal "not on the basis of duplicity, but on the ground of

2  frivolousness").

3    With respect to the antitrust claims, leave to amend will not change the fact that

4  Golden lacks standing. Accordingly, leave to amend is DENIED. *Terrado v. U.S. Bank*

5  *N.A.*, 801 F. App'x 580 (9th Cir. 2020) (denying leave to amend upon finding pro se

6  plaintiff lacked standing).

7  **IV.    CONCLUSION**

8    Intel's motion to dismiss patent infringement and unjust enrichment claims under

9  Fed. R. Civ. P. 12(b)(6) is GRANTED.  Additionally, Intel's Motion to Dismiss the

10  antitrust claims for lack of standing under Fed. R. Civ. P 12(b)(1) is GRANTED.  Finally,

11  because the Court finds that it would be futile, leave to amend is DENIED.

12    **IT IS SO ORDERED.**

13  Dated:  November 22, 2022    _____

14                Nathanael M. Cousins
                United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

8

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net



CASE NO: _____

LARRY GOLDEN

*Pro Se* Plaintiff,

V.

INTEL CORPORATION.

Defendant.

**(JURY TRIAL DEMANDED)**

**(Sherman Act) (The Clayton Act) (Unjust Enrichment) (Contributory Infringement).**

June 27, 2022

## COMPLAINT FOR ANTITRUST LAW VIOLATIONS AND PATENT INFRINGEMENT

This is a civil action brought under Antitrust Law violations commencing from competitor collaborations, conspiracy to restrain trade, and the illegal formation or maintenance of a monopoly, which likely resulted from a secret conspiracy and the anticompetitive practices recognized by this Court.

COMPLAINT

This action is also brought under Contributory Infringement commencing from the "manufacture, combination or composition; or, a material or an apparatus for use in practicing a patented process, constituting a material part of the invention".

This action is for damages and injunctive relief on behalf of the Plaintiff, against the defendant Intel Corporation. ("Intel"); demanding a trial by jury, complains and alleges as follows:

## <u>NATURE OF THE CASE</u>

1.      This enforcement action challenges Intel's unlawful maintenance of a monopoly formed with Intel's alleged infringing central processing units (CPUs) that processes functional and operational instructions for Plaintiff's patented new, useful, and improved upon laptops, desktop PCs, cell phones, and stall, stop, and vehicle slowdown systems.

2.      Intel has engaged in exclusionary conduct that reduces competitors' ability and incentive to innovate, and raises prices paid by consumers for Plaintiff's patented new, useful, and improved upon laptops, desktop PCs, cell phones, and stall, stop, and vehicle slowdown systems. Intel is a dominant supplier of central processing units (CPUs) for laptops; desktop PCs.

3.      Intel's customers in the CPU product market are OEMs, alias original equipment manufacturers, alias laptop and computer makers. OEMs compete with each other in various downstream markets, such as the laptop or desktop personal computer (or PC), which for present purposes we can assume to be substantially competitive.

4.      In order for Intel to produce a valuable end-product for consumers, these OEMs must produce software and machines [laptop or desktop personal computer (or PC)] that integrate with the Intel's CPU technology that they buy.

COMPLAINT

5.      In order to enable OEMs to produce the laptops and PCs in a sufficiently timely manner to be able to compete effectively in the fast-evolving laptop and computer market, and in order to facilitate simultaneous roll-out of new Intel CPU technology by multiple OEMs; Intel's general practice is supply at least major, or "strategic," OEMs with advance technical information and prototype CPUs on a rolling basis.

6.      Intel's '*contributory infringement*' commence from the "manufacture ... of the patented CPUs, as an apparatus for use in practicing a patented process of making the patented laptops and desktop PCs; the CPU constitute a material part of the invention"

7.      Intel has excluded competitors and harmed competition through interrelated policies and practices.

8.      Intel continues to condition benefits to computer makers in exchange for their promise to buy chips from Intel exclusively or to refuse to buy chips from others (*FTC v. Intel*, 2010).

9.      Intel continues its retaliation against computer makers if they do business with non-Intel suppliers by withholding benefits from them (*FTC v. Intel*, 2010).

10.      Intel has unjustly enriched itself with the unauthorized use of Plaintiff's patented CPU(s), Plaintiff's patented new and improve laptops and desktop PCs; and, Plaintiff's patented stall, stop, and vehicle slowdown systems [driver assistance system for the driverless, self-drive, and autonomous vehicle].

11.      Intel's conduct has harmed competition and the competitive process. At a time when computer technologies are expanding to new and varied applications, Intel's practices threaten further consumer harm in an industry in which competition and innovation are vitally important.

COMPLAINT

## JURISDICTION AND VENUE

12.     This complaint is filed under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26), to recover triple damages, injunctive relief, and costs of suit; for violation of Section 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2; conspiracy in the restraint of trade and single-firm violations).

13.     This Court has original federal question jurisdiction over the Sherman Act claim asserted in this complaint pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26).

14.     Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because defendant reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in this District.

15.     For patent litigation cases, the venue statute, 28 U.S.C. §1400(b), provides "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

16.     The activities of the Defendant, as described herein, were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States.

**Intradistrict Assignment**

17.     Assignment to the San Jose Division is proper. The actions arose in Santa Clara County because a substantial part of the events giving rise to these claims occurred in Santa Clara County. Intel has offices in Santa Clara and San Jose. Third parties that have information relevant to this action, including leading laptop and desktop PC manufacturers (also known as

COMPLAINT

"original equipment manufacturers" or "OEMs") and Intel competitors, also have offices in Santa Clara County.

## RELATED CASES

18.     Plaintiff has an Antitrust case pending in the United States District Court for the Northern District of California (Oakland); *Golden v. Qualcomm, Inc.*; Case No.: 4:22-cv-03283-KAW; Kandis A. Westmore is the Presiding Magistrate Judge. The cases are very similar in nature because Intel (**Exhibit A**) and Qualcomm were both notified in 2010 of Plaintiff's offer to license Plaintiff's intellectual property; both have had additional opportunities to enter into licensing agreements; both have formed or maintained a monopoly by either using, making, offering for sale, or selling Plaintiff's patented inventions; both have negotiated agreements with the OEMs to use, make, offer for sale, or sell Plaintiff's patented inventions; both received a benefit from the Plaintiff; and, both were unjustly enriched at the Plaintiff's expense. The term "benefit" means any type of advantage. (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 347.) receipt of a benefit and unjust retention of the benefit at the expense of another." (*Lyles v. Sangadeo-Patel* (2014) 225 Cal.App.4th 759, 769.)

## THE PARTIES

19.     Plaintiff Larry Golden is a citizen of South Carolina and has a principal place of business (ATPG Technology, LLC), and residence at 740 Woodruff Road, #1102, Greenville, S.C. 29607. Plaintiff is the author of three economic stimulus packages submitted to Government beginning in year 2003. The success of the packages was dependent on the development of certain intellectual property technology that is owned by the Plaintiff, and is asserted in this case (i.e., Communicating, Monitoring, Detecting, and Controlling (CMDC) devices; Central

Processing Units (CPUs) for New and Improved Cell Phones; and, Stall, Stop, and Vehicle

Slow-Down Systems (SSVSS). **Exhibits B-H; '497, '752, '189, '439, '287, '619, '891 patents**

20.     On information and belief, Intel is a California corporation with a principal place

of business at 2200 Mission College Blvd, Santa Clara, CA 95054 and does business in this

judicial district. Intel has offices in Santa Clara, CA and San Jose, CA.

21.     Intel's unjust enrichment of profits, resulting from a violation of antitrust laws;

anticompetitive practices; conspiracy in restraint of trade; direct infringement; and contributory

infringement, give rise to this complaint. Intel's monopolization and attempted monopolization

violations require no agreement as Section 1 violations do. *E.g., Spectrum Sports, Inc. v.

McQuillan*, 506 U.S. 447, 454 (1993) (explaining that "while § 1 . . . forbids contracts or

conspiracies . . ., § 2 addresses the actions of single firms that monopolize or attempt to

monopolize"). They are "single-firm" violations.

22.     According to Statista, "Intel's net revenue from 2011 to 2021 is $693.07B".

https://www.statista.com/statistics/263559/intels-net-revenue-since-1999/. Intel can be served at

2200 Mission College Blvd, Santa Clara, CA 95054.


## STATEMENT OF FACTS:

## INTEL'S KNOWLEDGE OF PLAINTIFF'S
## CENTRAL PROCESSING UNITS (CPUs) & "UNJUST ENRICHMENT"

23.     Plaintiff's claim for unjust enrichment requires the Plaintiff to show that: (1)

Plaintiff conferred a benefit onto Intel; (2) Intel had appreciation or knowledge of the benefit;

and (3) the acceptance or retention of the benefit was under such circumstances as to make it

inequitable for Intel to retain the benefit without payment of its value.", *Platz Associates v.

Finley*, 973 A.2d 743, 750 (2009). The unjust enrichment occurred when Party A (Plaintiff)

conferred a benefit upon Party B (Intel) without Party A (Plaintiff) receiving the proper restitution required by law.

24.     On 12/16/2010: Plaintiff's notice letters and licensing offer was mailed U.S. Postal Service, Certified Mail to Mr. Paul S. Otellini, President & CEO Intel, and Mr. Curt J. Nichols, VP Intel Capital Intel, at Mission College Blvd., Santa Clara, CA 95054-1549. Intel received and signed for the letters 12/20/2010. Phone: 408-765-8080. Tracking Nos: 7010 1870 0002 0193 0360 and 7010 1870 0002 0193 0377. **(Exhibit A)**

25.     In Plaintiff's most recent correspondence on June 10, 2022 **(Exhibit I)**, Intel denied having knowledge of the letters, "[r]egarding the certified mail you say Intel received on December 20, 2010, we have searched for the letter but we have not been able to locate it."

26.     The US District for the Eastern Court of Texas in *Motiva Patents, LLC v. HTC Corporation*, E.D. Texas, 9:18-cv-00179 (Oct. 2019), ruled that having a policy of ignoring others' patents is sufficient grounds to support claims of willful patent infringement.

27.     The Eastern District Court found HTC's policy of ignoring others' patents opened the door for support of Motiva's assertions that HTC willfully infringed upon Motiva's patents. The court stated that intentionally being blind to the facts was essentially the same as knowing about a competitor's patent and infringing on it anyway.

28.     The basic principle of "ignorance of the law is no excuse" applies to patent infringement—as the defendant in a Texas patent case discovered.

29.     The scope of Plaintiff's patented communication, monitoring, detecting, and controlling (CMDC) devices was challenged in an *Inter Partes Review* (IPR) and was found to be acceptable because "[t]he specific devices [a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal at a monitoring site for monitoring products for

COMPLAINT

communication therebetween], such as the cell phones and smart phones would be recognized by one of ordinary skill in the art as a type of communication device or monitoring equipment because cell phones and smartphones are devices that are capable of communication and are capable of receiving signals."

> *UNITED STATES DEPARTMENT OF HOMELAND SECURITY, Petitioner, v. LARRY GOLDEN, Patent Owner*. IPR Case IPR2014-00714 Patent RE43,990 E Before LORA M. GREEN, JON B. TORNQUIST, and KEVIN W. CHERRY, Administrative Patent Judges. CHERRY, Administrative Patent Judge. FINAL WRITTEN DECISION 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73 "Beginning with the claim preamble amendment, the preamble of claim 11 originally read: "A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal at a monitoring site for monitoring products for communication therebetween, comprising...." In claim 154, the language in italics has been eliminated and replaced with "the products grouped together by common features in the product groupings category of design similarity (e.g., computer terminal, personal computer (PC)) ...." Patent Owner contends that this new language is consistent with words found in the disclosure of the '118 application. Mot. To Amend 4. Patent Owner further contends that this new language is broad enough to include the removed items, such as cell phones and smart phones, because those items are "species terms" that are "included in the genus 'monitoring equipment' and 'communication device' when the clause 'products grouped together by common features in the product groupings category of design similarity' is included." Id. Patent Owner argues that "[t]he specific devices removed, such as the cell phones and smart phones would be recognized by one of ordinary skill in the art as a type of communication device or monitoring equipment because cell phones and smartphones are devices that are capable of communication and are capable of receiving signals." *Id*

COMPLAINT



**Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., laptop; PC)**

**Claim 13 of the '439 Patent**: "A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a personal digital assistant (PDA), a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising:
        at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program …

*Specifications*: "In addition, the basic monitoring terminal or PC 114, as shown in FIGS. 5 and 15, can be adapted and incorporated to include desktop PCs, notebook PCs, laptops, cell phones, LCD monitors, and satellite monitoring… computers, laptops, notebooks, PC's, and cell phones for the receipt and transmission of signals…

*Specifications*: Product grouping 4 (monitoring & communication devices) include, but are not limited to, mobile communication devices, …, wireless communication devices, monitoring sites, monitoring terminals, web servers, desktop personal computers (PCs), notebook personal computers (PCs), laptops, satellite phones, cell phones, … handhelds;

**Claim 14 of the '439 Patent**: "Monitoring equipment of at least one of products grouped together by common features in a product groupings category of design similarity comprising a computer terminal, personal computer (PC), laptop, desktop, notebook PC, handheld, cell phone, personal digital assistant (PDA) or smart phone interconnected to a product for communication therebetween, the monitoring equipment …

30.     Plaintiff believes Intel has unjustly enriched itself [the doctrine of unjust enrichment allows a plaintiff to recover from a defendant, without the benefit of an enforceable contractual obligation, where the defendant has unfairly benefited from the plaintiff's efforts without compensation] by using Plaintiff's patented communication, monitoring, detecting, and controlling (CMDC) devices (i.e., "[a] communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal at a monitoring site for monitoring products for communication therebetween, comprising…."; and, Plaintiff's central processing units (CPUs), i.e., the "brains" of the CMDC devices. No CMDC device— laptop or desktop PC—can function without at least one central processing unit (CPU).

COMPLAINT

31.    Plaintiff believes the laptops and desktop PCs Intel has "used without authorization"; and, the central processing units (CPUs) Intel has made, offered for sale, and sold since receiving knowledge of Plaintiff's intellectual property and patents (2010); Intel generated hundreds of billions of dollars in revenue. Plaintiff believes Intel mass marketed Plaintiff's patented inventions of a new and improved laptop, a new and improved desktop PC, and a new and improved CPU made for Plaintiff's CMDC devices, to prevent market entry.

32.    Plaintiff believes Intel is in violation of Section 2 of the Sherman Act, because Intel maintained a specific intent to monopolize both current and future generations of laptops, desktop PCs, and CPUs.

|  **Claim 1 of the '619 Patent:** A communication device that is at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, comprising at least a central processing unit (CPU), capable of … processing instructions … | **Central Processing Units (CPUs) for**<br><br>**Claim 5 of the '287 Patent:** A monitoring device, comprising: at least one central processing unit (CPU) … at least one of a transmitter or a transceiver in communication with the at least one CPU … such that the communication device is capable of communicating, monitoring, detecting, and controlling.<br><br>The "central processing unit (CPU), [chipset], is a component that controls everything in smartphones [laptops; desktop PCs] and ensures it functions correctly. It can be compared to the human brain. Every action perform goes straight to the processor." https://www. coolblue.nl/en/advice/smartphone-processors. html. "… CPU (central processing unit) is the brains of the entire device. Without one, no [laptop; desktop PC] would be able to function" (smartphonedomain.com., 2021). |

33.    Intel, a monopolist, has excluded Plaintiff and its competitors, and has established market dominance for CPUs through its anticompetitive practices. Plaintiff is alleging that since Intel was given notice (12/2010) of the operational and functionality of Plaintiff's CPUs, Intel has rushed the OEMs to produce laptops and desktop PCs that integrate with the CPU technology.

COMPLAINT

## PLAINTIFF OWNS THE RIGHT TO EXCLUDE INTEL FROM USING, MAKING, OFFERING FOR SALE, AND SELLING PLAINTIFF'S PATENTED INVENTIONS TO FORM OR MAINTAIN ITS MONOPOLY

34.     In a related case, *Golden v. US*, COFC case no. 13-307C, Plaintiff demonstrated

he owns the rights to the new, useful, and improved upon CMDC devices of a laptop, a desktop

(PC), a cell phone, and a central processing unit. Plaintiff was ordered to present preliminary

infringement contentions charts for the alleged ten infringing products of Apple; the alleged nine

infringing products of Samsung; and, the alleged nine infringing products of LG.

35.     Plaintiff presented over 1900 pages of claim charts to show Apple, Samsung, and

LG directly infringed, and infringed under the 'doctrine of equivalents', Plaintiff's claim 1 of the

'497 patent; claim 10 of the '752 patent; claims 1-9 of the '189 patent; claims 13-23 of the '439

patent; and, claims 4-6 of the '287 patent. **(Exhibits B-F)**

36.     Plaintiff's twenty-five (25) independent patent claims presented in the *Golden v.

US*, COFC case no. 13-307C, were "*comprising*" claims. The patent claims cover what the

CMDC device of a laptop, a desktop (PC), a cell phone, and a central processing unit actually

does.

37.     Plaintiff is including in this complaint claims 1-20 of Plaintiff's '619 patent to

demonstrate what the CMDC device of a laptop, a desktop (PC), a cell phone, and a central

processing unit is "*capable of*".

38.     Where a claim recites that a structure is "capable of" a particular function, the

phrase "capable of" encompasses structures that are capable of the function during the course of

a *use* that is intended by the patent, as well as structures that are capable of accomplishing tasks

through misuse or incidental use.

COMPLAINT

39.     Functional elements using "capable of-type" language include recitations of "wherein the device is capable of," "wherein the device is configured for," and "wherein the device is adapted for."

40.     Intel's task is to produce a device(s) that is "capable of" performing the same function as Plaintiff's "capable of" patent claims (claims 1-20 of Plaintiff's '619 patent) for Plaintiff's patented CMDC devices (i.e., laptops, personal computers (PCs)), and Plaintiff's patented Central Processing Units (CPUs); or, produce prior art references that antedates Plaintiff's patents.

41.     Claims 1-20 of Plaintiff's '619 patent: **(Exhibit G)**

1.     A communication device that is at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, comprising at least a central processing unit (CPU), ***capable of***:
     processing instructions to lock, unlock, or disable the lock of the communication device;
     processing instructions to activate a lock, unlock, or disabling lock means by engaging a vehicle with a two-way communication key-fob;
     processing instructions to activate a start, stall, stop, or disabling means by engaging a vehicle's ignition system;
     processing instructions to activate a lock, unlock, or disabling lock means; a start, stall, stop, or disabling vehicle means by engaging the operational systems of the unmanned aerial vehicle;
     processing instructions to authenticate or identify a user by at least one of biometric fingerprint recognition, biometric facial recognition, biometric iris recognition, or biometric retina recognition;
     processing instructions to scan a senor or tag using the short-range wireless technology of radio frequency near-field communication (NFC);
     processing instructions to monitor or detect at least one of a chemical sensor, a biological sensor, a motion sensor, a biometric sensor, a signature sensor, or a human sensor;
     processing instructions to monitor or detect for at least one of chemical agent, biological agent, radiological agent, nuclear agent, or explosive agent, weapons of mass destruction (WMDs);
     processing instructions received through at least one of a Bluetooth, a Wi-Fi, a satellite, a global positioning system (GPS), or a cellular transmission;
     processing instructions to connect the communication device to the internet or internet-of-things (IoTs) platform to sync, to at least one of a

COMPLAINT

building's computer or security system, a vehicle's computer or security system, a lock, a detection device, or another communication device; and,

whereupon, the communication device is capable of processing instructions for operational and functional execution, and is capable of providing feedback of the execution, and storing the feedback into memory.

2.      The communication device of claim 1, comprising at least a central processing unit (CPU), *capable of* processing operational instructions for at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner.

3.      The communication device of claim 1, comprising at least a central processing unit (CPU), *capable of* receiving a signal to lock, unlock, or disable the lock of the communication device.

4.      The communication device of claim 1, comprising at least a central processing unit (CPU), *capable of* receiving a signal of at least fingerprint recognition, facial recognition, iris recognition, or retina recognition.

5.      The communication device of claim 1, comprising at least a central processing unit (CPU), *capable of* receiving a signal of at least short-range wireless radio frequency near-field communication (NFC).

6.      The communication device of claim 1, comprising at least a central processing unit (CPU), *capable of* receiving a signal from at least chemical sensor, biological sensor, motion sensor, biometric sensor, signature sensor, or human sensor.

7.      The communication device of claim 1, comprising at least a central processing unit (CPU), *capable of* receiving a signal from at least one of chemical, biological, radiological, nuclear, or explosives detection.

8.      The communication device of claim 1, comprising at least a central processing unit (CPU), *capable of* receiving a signal through at least a Bluetooth, a Wi-Fi, a satellite, a cellular, or GPS connection.

9.      The communication device of claim 1, comprising at least a central processing unit (CPU), *capable of* receiving a signal of the communication device connection to the internet or internet-of-things (IoTs) platform to sync at least a building's computer or security system, a vehicle's computer or security system, a lock, a detection device, or another communication device.

10.      The communication device of claim 1, comprising at least a central processing unit (CPU), *capable of* receiving a signal of the operational and functional execution of instructions; capable of providing feedback of the execution; and, capable of storing the feedback into memory.

COMPLAINT

11.    A central processing unit (CPU) of at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, *capable of*:

processing instructions to lock, unlock, or disable the lock of the communication device;

processing instructions to activate a lock, unlock, or disabling lock means by engaging a vehicle with a two-way communication key-fob;

processing instructions to activate a start, stall, stop, or disabling means by engaging a vehicle's ignition system;

processing instructions to activate a lock, unlock, or disabling lock means; a start, stall, stop, or disabling vehicle means by engaging the operational systems of the unmanned aerial vehicle;

processing instructions to authenticate or identify a user by at least one of biometric fingerprint recognition, biometric facial recognition, biometric iris recognition, or biometric retina recognition;

processing instructions to scan a senor or tag using the short-range wireless technology of radio frequency near-field communication (NFC);

processing instructions to monitor or detect at least one of a chemical sensor, a biological sensor, a motion sensor, a biometric sensor, a signature sensor, or a human sensor;

processing instructions to monitor or detect for at least one of chemical agent, biological agent, radiological agent, nuclear agent, or explosive agent, weapons of mass destruction (WMDs);

processing instructions received through at least one of a Bluetooth, a Wi-Fi, a satellite, a global positioning system (GPS), or a cellular transmission;

processing instructions to connect the communication device to the internet or internet-of-things (IoTs) platform to sync, to at least one of a building's computer or security system, a vehicle's computer or security system, a lock, a detection device, or another communication device; and,

whereupon, the central processing unit (CPU) of the communication device is capable of processing instructions for operational and functional execution, and is capable of providing feedback of the execution, and storing the feedback into memory.

12.    The central processing unit (CPU) of claim 11, *capable of* processing operational instructions for at least one of a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner.

13.    The central processing unit (CPU) of claim 11, *capable of* processing operational instructions to lock, unlock, or disable the lock of the communication device.

14.    The central processing unit (CPU) of claim 11, *capable of* processing operational instructions of at least fingerprint recognition, facial recognition, iris recognition, or retina recognition.

COMPLAINT

15.     The central processing unit (CPU) of claim 11, *capable of* processing operational instructions from short-range wireless radio frequency near-field communication (NFC).

16.     The central processing unit (CPU) of claim 11, *capable of* processing operational instructions from at least chemical sensor, biological sensor, motion sensor, biometric sensor, signature sensor, or human sensor.

17.     The central processing unit (CPU) of claim 11, *capable of* processing operational instructions from at least chemical, biological, radiological, nuclear, or explosives detection.

18.     The central processing unit (CPU) of claim 11, *capable of* processing operational instructions through at least a Bluetooth, a Wi-Fi, a satellite, a cellular, or GPS connection.

19.     The central processing unit (CPU) of claim 11, *capable of* processing operational instructions of the communication device connection to the internet or internet-of-things (IoTs) platform to sync at least a building's computer or security system, a vehicle's computer or security system, a lock, a detection device, or another communication device.

20.     The central processing unit (CPU) of claim 11, *capable of* processing operational instructions of functional execution of instructions; capable of providing feedback of the execution; and, capable of storing the feedback into memory.

42.     Plaintiff believes Intel has violated Section 2 of the Sherman Act by maintaining a monopoly with the use; the making; the offering for sale; and the sale of Plaintiff's patented new, useful, and improved upon CMDC devices of a laptop, a desktop (PC), and a central processing unit.

## INTEL'S SINGLE-FIRM CONDUCT UNDER SECTION 2 OF THE SHERMAN ACT

43.     Plaintiff believes Intel willfully maintained its monopoly power for present and future generations in the [CPU] market with the unauthorized "use" of Plaintiff's patented

COMPLAINT

CMDC devices (e.g., laptops; desktop PCs), and Plaintiff's patented CPUs designed and made for Plaintiff's patented CMDC devices.

44.      Intel's customers in the CPU product market are OEMs, alias original equipment manufacturers, alias laptop and computer makers. OEMs compete with each other in various downstream markets, such as the laptop or desktop personal computer (or PC), which for present purposes we can assume to be substantially competitive.

45.      In order to produce a valuable end-product for consumers, these OEMs must produce software and machines that integrate with the CPU technology that they buy. In order to enable OEMs to do so in a sufficiently timely manner to be able to compete effectively in the fast-evolving laptop and computer market, and in order to facilitate simultaneous roll-out of new CPU technology by multiple OEMs and thus maximize the value of advertising expenditure at launch, it was Intel's general practice to supply at least major, or "strategic," OEMs with advance technical information and prototype CPUs on a rolling basis.

46.      It did so, however, under contracts that were terminable at will and authorized use of the technical information only for purposes of building Intel-compatible computers.

47.      The FTC's legal argument was a classic Section 2 Sherman Act argument: Intel, a monopolist, had "willfully maintained its monopoly power in the [CPU] market through exclusionary conduct that was not reasonably necessary to serve any legitimate, procompetitive purpose," with the "specific intent to monopolize both the current generation and future generations of [CPUs]," and with a "dangerous probability" of success in doing so. See *In re Intel Corp.*, No. 9288, Complaint (FTC June 8, 1998): </os/1998/06/intelfin.cmp.htm>; Agreement Containing Consent Order (FTC March 17, 1999): </os/1999/9903/d09288 intelagreement.htm>.

COMPLAINT

48.     Plaintiff believes, Intel is in violation of Section 2 of the Act, 15 U.S.C. 2; which prohibits monopolization, attempts to monopolize, and conspiracies to monopolize "any part of trade or commerce among the several States or with foreign nations." Intel is considered a monopoly because they are the largest chip manufacture and have made deals with computer manufacturers to produce [plaintiff's patented laptops and desktop PCs] computers with only Intel [alleged infringing CPU] chips.

49.     OEMs must produce laptops and desktop PCs that integrate with the CPU technology that they buy. Plaintiff has alleged Intel's '*advanced technical information*' supplied to the OEMs, is the intellectual property of the Plaintiff.

50.     The Clayton Act authorizes Plaintiff to sue for triple damages when Plaintiff have been harmed by conduct that violates either the Sherman or Clayton Act and to obtain a court order prohibiting the anticompetitive practice in the future.

## THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS RULES THAT PATENT INFRINGEMENT CAN VIOLATE ANTITRUST LAWS

51.     According the U.S. District Court for the Eastern District of Texas, patent infringement can be considered anticompetitive conduct under federal antitrust law.

52.     This ruling arose out of a dispute between Retractable Technologies, Inc. (Retractable) and Becton, Dickinson and Company (BD), *Retractable Technologies, Inc., et al. v. Becton, Dickinson and Co.*, Case No. 2:08-CV-00016 (E.D. Tex.), in which Retractable alleges that BD's infringement of Retractable's patents foreclosed competition and maintained BD's monopoly power in the hypodermic syringe market, thereby violating Section 2 of the Sherman Act, 15 U.S.C. § 2.

COMPLAINT

53.     Intel is the leading U.S. manufacturer of central processing units (CPUs) and holds a very large share of the relevant market.  Plaintiff claims Intel took steps to protect its dominant position after Plaintiff provided Intel with the intellectual property subject matter of Plaintiff's patented inventions in 2010.

54.     Plaintiff contends that Intel's actions of using, making, offering for sale, and selling Plaintiff's patented inventions, together with other exclusionary conduct including unlawful bundling and loyalty discounts, impeded the adoption of Plaintiff's new, improved upon, and useful CMDC devices (i.e., laptops, desktop PCs), and central processing units (CPUs).

55.     Plaintiff believes he has alleged enough factual information, that if taken as true, proves Intel has violated Section 2 of the Sherman Act. Plaintiff believes he has demonstrated that Intel (1) possesses monopoly power, and (2) acquired, enhanced, or maintained that power by exclusionary or anticompetitive conduct, *United States v. Grinnell Corp.*, 384 U.S. 563 (1966).

56.     On September 9, 2013, U.S. District Court Judge Leonard Davis adopted the recommendations of U.S. Magistrate Judge Roy S. Payne's August 5 'Report and Recommendation'.  Judge Davis agreed with Judge Payne that the only binding precedent offered by BD in support of its arguments held that patent infringement is not an injury recognized under the Sherman Act, [a plaintiff must prove antitrust injury in order to recover damages] but this has nothing to do with patent infringement as anticompetitive conduct.

57.     Both judges noted the U.S. Supreme Court's statement in *U.S. v. American Tobacco Co.* that the Sherman Act covers "every conceivable act which could possibly come

COMPLAINT

within the spirit or purpose of the prohibitions of the law, without regard to the garb in which such acts were clothed", 221 U.S. 106, 181 (1911).

## INTEL HAS ENGAGED IN ANTICOMPETITIVE CONDUCT THAT IS LINKED TO THE ANTITRUST INJURY

58.    Plaintiff is providing data to support 'upon information and belief' Intel's market share is within Intel's possession. Plaintiff does not simply plead that Intel has control [monopoly control] of the market; Plaintiff specifies the percentage of the market control:

59.    Intel's share in laptops grew to 1.2 points to 81 percent against AMD while its desktop share grew 0.8 points to 80.7 percent, according to Mercury Research's report for the fourth quarter of 2020. The result is that Intel grew market share for x86 CPUs overall by 0.7 points, bringing it to 78.3 percent. https://www.crn.com/news/components-peripherals/intel-regains-pc-market-share-against-amd-as-cpu-capacity-expands

60.    Intel and AMD PC Notebook market share: As of Q4 2021, Intel mobile CPU units accounted for 77.8% market share whereas AMD's mobile units held a share of 22.2%. https://wccftech.com/intel-regain-significant-market-share-versus-amd-in-client-pc-segment-thanks-to-alder-lake-epyc-knockout-xeon-server-segment/

61.    In the second quarter of 2022, 63.55 percent of x86 computer processor or CPU tests recorded were from Intel processors, up from the lower percentage share seen in previous quarters of 2021, while 36.4 percent were AMD processors. When looking solely at laptop CPUs, Intel is the clear winner, accounting for 73.7 percent of laptop CPU test benchmark results in the second quarter of 2022. https://www.statista.com/statistics/735904/worldwide-x86-intel-amd-market-share/

COMPLAINT

Overall x86 CPU Share - ALL CPUs

| Overall x86 CPU Share<br>Includes IoT and SoC | 2021 Q4<br>Share | 2021 Q3<br>Share | 2020 Q4<br>Share | Change<br>Quarter | Change<br>Year |
|---|---|---|---|---|---|
| Intel | 74.4% | 75.4% | 78.3% | - 1.0 | - 3.9 |
| AMD | 25.6% | 24.6% | 21.7% | + 1.0 | + 3.9 |
| VIA | 0.0% | 0.0% | 0.0% | - 0.0 | - 0.0 |
| Total | 100.0% | 100.0% | 100% | | |

62.     Plaintiff has properly alleged the specific product market - namely, laptops, desktop PCs, and central processing units (CPUs). Further, Plaintiff has properly defined the geographic market by pleading it encompasses the United States. "Intel has directed the design and used the OEMs laptops and desktop PCs; and, sold and/or offered for sale in the United States, the central processing units (CPUs) of Intel.

63.     Plaintiff has sufficiently articulated he has suffered an injury as a result of Intel's alleged conduct that has affected the competitive process of marketing Plaintiff's new, useful, and improved upon laptops, desktop PCs, and CPUs.

64.     Plaintiff has properly pleaded its antitrust claims by alleging sufficient facts to support the plausibility of the necessary elements of those claims.

65.     This Court should recognize that "[b]ecause of the innovation and commercial viability that they encourage, courts have afforded suits to enforce patents a presumption of good faith," and that "[i]t naturally follows that a higher standard of proof is needed to overcome that presumption." *Campbell*, 2020 WL 5049051, at *7

COMPLAINT

66.     The Court of Appeals for the Ninth Circuit has explained, "[t]he road to the Patent Office is so tortuous and patent litigation is usually so complex," that "no less than [c]lear, convincing proof of intentional fraud involving affirmative dishonesty" would suffice in patent cases (citation omitted)).

67.     Intel's, use of, making, offering for sale, and selling of Plaintiff's intellectual property (new, useful, and improved upon laptops, desktop PCs, and CPUs); and, Intel's exclusionary anticompetitive practices made it possible for Intel to maintain its monopoly.

## **INTEL'S INVASION ON PLAINTIFF'S INTELLECTUAL PROPERTY SUBJECT MATTER IS TOO EXPANSIVE TO BE COINCIDENTAL**

68.     The issue with "intent" is; "did Intel know it was doing something wrong?" Plaintiff believes the antitrust violations alleged in this case are too massive to be unintentional.

69.     The legal standards in antitrust law are generally viewed as combinations of conduct and intent standards. Intel's intent is general when Intel simply engaged in conduct that violates the law. Plaintiff alleges Intel's antitrust violations are more specific because Intel engaged in the anticompetitive conduct for particular reasons (e.g., to harm the Plaintiff, competitors, investors, consumers, the SEC, and the USPTO), or with particular knowledge (e.g., Intel was given notice of Plaintiff's intellectual property in 2010 **(Exhibit A)**.

70.     Case law suggests that Plaintiff must meet a higher burden with respect to Intel's intent under Section 2 of the Sherman Act than is typically required under Section 1. Under Section 1, Plaintiff generally must demonstrate only that the Intel intended to engage in the conduct that is asserted to violate the law. Under Section 2, Plaintiff must [and have] produce

COMPLAINT

evidence that is consistent with a specific intent to monopolize, in the sense that the overwhelming—perhaps the sole—purpose of the Intel's conduct is to reduce competition.

71.     The best-known conduct standard in antitrust law is the rule of reason (or reasonableness) test, which requires proof that the competitive harms from the Intel's conduct outweigh any purported benefits to consumers from that conduct. Plaintiff believes the consumers and customers were drawn into a scheme of deceit (e.g., consumers reliance upon false information to cover inflated prices), and fraud (e.g., simply not telling the whole story to the OEMs in order to make a deal happen).

72.     The second type of legal standard, an intent standard, determines liability in part by evidence concerning Intel's state of mind. Plaintiff's claims require proof merely of Intel's intent to carry out the conduct set forth in the complaint; these claims fall under a general intent standard. These claims require only that Intel knew that it was taking a particular action, not that Intel does so with the purpose of bringing about a particular (undesirable) result.

73.     Plaintiff believes Intel's invasion on Plaintiff's intellectual property subject matter is too expansive to be coincidental.

74.     Plaintiff believes Intel produced Plaintiff's patented CPUs as prototypes for the OEMs to test with the laptops and desktop PCs. Plaintiff believes the OEMs design Plaintiff's patented laptops and desktop PCs to function with the CPUs provided them by Intel.

75.     Intel was able to form and maintain its monopoly status by using, making, offering for sale, and selling Plaintiff's patented inventions. Intel's anticompetitive conduct is in violation of Section 2 of the Sherman Act. Intel continues its intentional massive invasion of Plaintiff's patented inventions. Plaintiff believes Intel's conduct is not coincidental. See the following:

COMPLAINT

**Intel's Loihi Neuromorphic Chip for the Detection of Chemical Agents, Biological Agents, Explosives'; Disease and Narcotics**

Intel's Loihi Neuromorphic Chip to Learn and Recognize the Scents of 10 Hazardous Chemicals. Below: Intel Labs' Nabil Imam holds a Loihi neuromorphic chip in his Santa Clara, California, neuromorphic computing lab. (Walden Kirsch/Intel Corp.)



Neural algorithm derived from the architecture of the brain's olfactory circuits, Intel and Cornell trained Intel's Loihi neuromorphic chip to learn and recognize the scents of 10 hazardous chemicals … the activity of 72 chemical sensors in response to these smells and configured the circuit diagram of biological olfaction on Loihi. The chip quickly learned the neural representation of each of the smells and each odor, demonstrating a promising future for neuroscience and AI.



Above: A photo shows Intel's Loihi 2 neuromorphic chip on the tip of a finger

**Plaintiff's Detection System**

**Claim 4 of the '287 patent.** A communication device comprising:

at least one central processing unit (CPU);

at least one or more detectors in communication with the art least one CPU for detecting at least one of a chemical, biological, radiological, or explosive agents …

at least one of a transmitter or a transceiver in communication with the at least one CPU configured to send signals to monitor … or send signals to detect at least one of a chemical biological, radiological, or explosive agent such that the communication device is capable of communicating, monitoring, detecting, and controlling.

*Specifications*: "[T]he detectors 46 are interconnected to the cpu 40 of the detection system … transmitting the appropriate signals to the cpu 40 upon detection of the particular agent or compound … "a conventional microprocessor for controlling the various functions and generating the appropriate signals for transmission to the cpu 40 of the detector … FIG. 11 illustrates a representative schematic 74 for describing the signal transmission process from the detector 46 to the cpu 40 … chemical, biological, and radiological hazard detections …"

*Intel embedded processor*: The hazardous odors learned and recognized by Loihi pose a danger to public health, serving as precursors in the manufacturing of explosives, narcotics and polymers. The findings demonstrate the promise of neuromorphic chips to recognize these odors under real-world conditions more effectively than conventional solutions and give us a view into potential use cases of neuromorphic technology. Portable "electronic nose systems" with neuromorphic chips could be used by doctors to diagnose diseases, by airport security to detect weapons and explosives, by police and border control to more easily find and seize narcotics, and even to create more effective at-home smoke and carbon monoxide detectors.

**Intel's Mobileye CPUs are Capable of Processing the Operational and Functional Instructions for Driverless & Autonomous Vehicles**

| **Intel's Mobileye** | **Plaintiff's Stall, Stop, Vehicle Slow-down System** |
|---|---|
| Mobileye launched 1st generation EyeQ1 processor in 2008. The technology offered driver assistance including AEB (automatic emergency braking). In 2017, Mobileye unveiled model for safe self-driving cars. Mobileye demonstrated an autonomous car equipped only with cameras on the streets of New York City in January 2020. Mobileye Supervision uses EyeQ5 SoC devices processing data from 11 cameras. Mobileye Level 4 self-driving system full sensor suite includes 13 cameras, 3 long-range LiDARs, 6 short-range LiDARs and 6 radars.<br><br><br><br>In 2021, Intel took Mobileye automotive unit via an IPO of newly issued stock in 2022. Mobileye's vision-based advance driver assistance system (ADAS) is based on the same core technology… systems offer lane departure warning, forward collision warning, headway monitoring and warning<br><br>Intel's Mobileye unit unveiled a supercomputer on a chip for autonomous driving at CES 2022. Called EyeQ Ultra, it features 176 trillion operations per second. The SoC provides four proprietary accelerators that are paired with CPU cores. | **Claim 44 of the '891 patent.** A vehicles' stall-to-stop system or vehicle slowdown system in signal communication with a pre-programmed automated system is adapted, modified, or designed to control the vehicles' stall-to-stop means or vehicle slowdown means, comprising:<br>  an electrical system in electrical communication with at least one of a brake, a foot peddle, <u>a radar, a camera</u>, a navigational system, a light, a speed control, an ignition system, a steering wheel, a transmission, a fuel system, and a motor;<br>  a computer system in signal transmission communication with at least one of the brake, the foot peddle, <u>the radar, the camera</u>, the navigational system, the light, the speed control, the ignition system…<br>  a receiver in electrical communication with the electrical system and adapted to receive at least one control signal …<br>  a receiver in computer communication with the computer system and adapted to receive at least one control signal in response to one of the vehicle's operating … and,<br>  wherein the at least one control signal is communicated from the receiver to the electrical system or the computer system to control at least one of the brake, the foot peddle, the radar, the navigational system, the light, the speed control, …<br><br>***Specifications:*** "[a]n electronic device such as a laptop computer … for transmitting signals to a vehicle for activating an onboard stall-to-stop device for bringing the vehicle to a halt … the integration of … electronic communication or telecommunication devices such as … a laptop computer 187b with the monitoring equipment 138 located at a predesignated monitoring site 188 … the … CPU of the vehicle 192 to initiate or execute any commands that will actuate the stall-to-stop … the CPU … to execute any commands to the stall-to-stop system for executing the disengagement of the vehicle's 192 electromotive system 194 for bringing the vehicle 192 to a halt" |

COMPLAINT

**Intel's Mobileye 'Supercomputer on a Chip' is Used with Plaintiff's Stall, Stop, Vehicle Slow-down System for Driverless & Autonomous Vehicles**

| | |
|---|---|
|  | **Claim 47 of the RE43,891 patent:** Unintended Acceleration<br><br>**Claim 48 of the RE43,891 patent:** Forward Pre-crash<br><br>**Claim 49 of the RE43,891 patent:** Reverse Pre-crash<br><br>**Claim 50 of the RE43,891 patent:** Vehicle Stabilization<br><br>**Claim 51 of the RE43,891 patent:** Lane Departure<br><br>**Claim 53 of the RE43,891 patent:** Adapted Cruise Control |
|  | **Claim 55 of the RE43,891 patent:** "The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 44, further can be adapted, modified or designed to include a vehicle designed to perform as a driverless or autonomous vehicle for stopping or slowing a vehicle that is in operation with or without a user, driver or operator inside the vehicle." |
|  | **Claim 45 of the RE43,891 patent:** "The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 44, further can be adapted, modified or designed to include a global positioning system (GPS) receiver adapted for communication with … one satellite."<br><br>**Claim 1 of the 8,334,761 patent:** A vehicle adapted for receipt of a signal from a remote location to remotely control the vehicles' stall-to-stop means or vehicle slowdown means … a user determines that the vehicle has been stolen and in response initiates a distress signal communication … includes … a cell phone tower and a satellite. |
|  | **Claim 46 of the RE43,891 patent:** "The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 44, further can be adapted, modified or designed to include a cellular communication device adapted for communication with at least one cell phone tower; further including, at least one satellite connection capable of communicating with the pre-programmed automated system; further including, … one modem connection for short and long range radio frequency … to and from the pre-programmed automated system." |
|  | **Claim 52 of the RE43,891 patent:** "The vehicles' stall-to-stop means or the vehicles' slowdown means of claim 44, further can be adapted, modified or designed to include a vehicle system designed to perform as a remote vehicle slowdown system for stopping or slowing a vehicle by remote means." |

COMPLAINT

**Intel's CPUs are Capable of Processing the Operational and Functional Instructions of the Intel-based Laptops Equipped with Fingerprint Scanners**

| | **Plaintiff's Biometric Fingerprint** |
|---|---|
| <br><br>HP Envy 13: Integrated UHD Graphics; Intel Core i7-1165G7; 13.3-inch FHD; Touchscreen Display; Fingerprint Scanner<br><br><br><br>Dell Vostro 15 5000 5510; Intel Iris Xe Graphics; 11th Generation Intel Core i7-11370H; 15.6-inch FHD (1920 x 1080); Anti-glare Display; Fingerprint Scanner<br><br><br><br>Lenovo IdeaPad 5; Intel Iris Xe Graphics; 11th Gen Intel Core i5-1135G7; 15.6" FHD WVA 300nits Anti-glare, 10-point Multi-touch Display; Fingerprint Scanner | **Claim 1 of the '189 patent.** A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a PDA, a laptop, or a computer terminal for monitoring products, interconnected to a product for communication therebetween, comprising …<br><br>      at least one of a central processing unit (CPU) for executing and carrying out the instructions of a computer program …<br>      wherein the communication device is equipped with a biometric lock disabler that incorporates at least one of a fingerprint recognition, voice recognition, face recognition, hand geometry, retina scan, iris scan and signature such that the communication device that is at least one of the cell phone, the smart phone, the desktop, the handheld, the PDA, the laptop or the computer terminal …<br><br>*Specifications*: "[t]he fingerprint biometric lock with disabler for engaging and disengaging the fingerprint biometric lock … [a] match occurs with a known fingerprint stored by the cpu … [p]roduct grouping 6 (biometrics) include, but are not limited to, fingerprint recognition"<br><br>*Defined*: Biometrics is a technology that uses a human's biological features, such as facial characteristics, fingerprint patterns, retina, voice and signature, to authenticate a person's identification and authorize specific actions. Of all of them, fingerprint analysis technology is the most mature and has the widest acceptance. Fingerprint biometrics: is legal representation of a person's signature<br><br>When a finger is detected, the auto-finger detection circuit sends an interrupt signal to the host CPU, which wakes the sensor for the finger scan. Once the scan is complete, the CPU tells the sensor to return to sleep mode. The memory holds the image data until the CPU is available. The data is synchronized with the CPU for processing… |

COMPLAINT

**Intel's CPUs are Capable of Processing the Operational and Functional Instructions of the Intel-based Laptops Enabled Near-Field Communication (NFC) Standards**

| Dell systems (laptops; desktop PCs) that incorporate Intel's CPUs and NFC will include this symbol | **Plaintiff's Near-Field Communication** |
|---|---|
|  | **Claim 22 of the '439 patent**.    A communication device of at least one of a cell phone, a smart phone, a desktop, a handheld, a personal digital assistant (PDA), a laptop, or a computer terminal, comprising      at least one of a central processing unit (CPU), a network processor, or a front-end processor for communication between a host computer and other devices …      the communication device being capable of wireless near-field communication (NFC) which allows radio frequency (RF) data to be at least one of received or transferred between the communication device and at least one tag that is read by the communication device; |
| Ultrabooks and other Intel-based laptops. The companies will bring MasterCard's NFC-powered PayPass to Ultrabooks and other Intel-based laptops. On compatible systems you'll only need to tap your PayPass-enabled credit card or device to your computer — there'll be no need to type out the card number, pesky three-digit code, or expiration date. | ***Specifications:*** "[r]adio frequency (i.e., near-field communication (NFC)) interconnected to a central processing unit (cpu), such as cpu 40 … "[p]roduct grouping 5 (communication methods) include, but are not limited to… Radio Frequency" |
|  | ***Defined***: Near Field Communication (NFC) is a set of standards for laptops and similar devices to establish radio communication with each other by touching them together, or bringing them in close proximity with each other, usually no more than a few inches/centimeters. |
| | ***Intel embedded processor***: Intel says that with its Identity Protection Technology there's no need to worry. IPT features both hardware and software authentication: after you type in a username and password, an embedded processor will generate a one-time authentication code, and then hand off the (encrypted) info. By Dante D'Orazio, Nov 14, 2011, 12:31pm EST |
| | ***Example***: Dell - Latitude 9000 15" Laptop; Processor Brand – Intel; Processor Model - Intel 11th Generation Core i7; Intel Core i7 - 16 GB Memory - 512 GB SSD; Operating System - Windows 10 Pro; NFC Enabled $2,569.99 |

COMPLAINT

**Intel's CPUs are Capable of Processing the Operational and Functional Instructions of "Intel's Vision" Internet of Things**

| | |
|---|---|
| "The Internet of Things (IoT) offers tremendous new business opportunities. By leveraging the Intel® family of processors, organizations can integrate ..." https://www. intel.com. "At Intel, we understand the exponential power of data, and we're making it practical and economical to put it to work from edge to cloud. By enabling technology providers to develop solutions that harness the massive flood of data through the combination of IoT, AI, and 5G, we'll accelerate business transformation to a degree never before seen." | **Plaintiff's Internet of Things (IoTs)**<br><br>**Claim 11 of the '619 patent**.     A central processing unit (CPU) of at least a personal computer (PC), a cellphone, a smartphone, a laptop, or a handheld scanner, capable of ...<br>          processing instructions received through at least one of a Bluetooth, a Wi-Fi, a satellite, a global positioning system (GPS), or a cellular transmission;<br>          processing instructions to connect the communication device to the internet or internet-of-things (IoTs) platform to sync, to at least one of a building's computer or security system, a vehicle's computer or security system, a lock, a detection device, or another communication device; and ... |
|  | ***Specifications***: "[I]nternet and GPS connections and a cpu interconnected with the Internet and GPS connections ... the present invention illustrating the GPS, Internet and power source connections ... connections or contacts that can include an Internet connection 32, a GPS connection ... [p]roduct grouping 5 (communication methods) include, but are not limited to ... Internet ... Global Positioning System (GPS)" |
| "[E]nhanced for IoT, Intel Atom® x6000E processor series and Intel® Pentium® and Celeron® N and J Series processors deliver next-generation CPU [] performance with integrated support for real-time computing ... [u]p to 70 percent of enterprises will run varying levels of data processing at the IoT edge by 2023 ... [T]o support the next generation of IoT edge devices, Intel has developed a new line of processors enhanced for IoT: The Intel Atom® x6000E processor series and Intel® Pentium® and Intel® Celeron® N and J Series processors. These processors build on new levels of CPU and graphics performance with integrated IoT features, real-time performance, manageability, security, and functional safety." https://www.intel.com/ | ***Defined***: 12th Gen Intel® Core™ Processors for IoT Applications: These IoT processors combine Performance-cores (P-cores) to enhance single-thread throughput for IoT workloads and Efficient-cores (E-cores) to enhance task management and multithread throughput. Intel® Xeon® D-1700 and D-2700 Processors for IoT Applications: These processors are ideal for video analytics, workload consolidation, and other demanding applications for video analytics, manufacturing, aerospace, and defense.<br><br>***Intel IoT and GPS***: When paired with IoT, GPS provides the ability to quantify and record large amounts of data pertaining to time, location, speed and direction. IoT technology enhances GPS devices to transmit data remotely and connect to other systems and sensors. GPS and IoT are complementary to create a more robust, accessible collection of interconnected data. |

COMPLAINT

## <u>INTEL WILLFULLY CONTRIBUTED TO THE INFRINGEMENT OF PLAINTIFF'S CPUs; CMDC DEVICES; STALL, STOP, & VEHICLE SLOWDOWN SYSTEMS</u>

76.     Liability for contributory infringement [1] of a patent is defined by 35 U.S.C. § 271(c): "Whoever offers to sell or sells within the United States ... a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, ... shall be liable as a contributory infringer."

77.     The threshold requirement for this claim of contributory infringement is the existence of direct infringement. *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972).  Plaintiff has shown throughout this complaint "that the alleged contributory infringer knew of the patent and that his or her [Intel's] actions would lead to infringement of the patent. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964).

78.     Intel was knowledgeable of Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) devices. Plaintiff provided Intel with 'notice letters' in December, 2010.

---

[1] Contributory infringement originated in case law as a way to enable a patentee to enforce a patent when it was being infringed by a large number of persons whom it was impractical to sue together. The doctrine of contributory infringement permitted the patentee to sue an entity that had instigated the collective infringement either by selling a product that had no use other than to infringe the patent, or using other means to encourage infringement, such as providing instructions on how to infringe the patent. Liability for contributory infringement of a patent is defined by 35 U.S.C. § 271(c): "Whoever offers to sell or sells within the United States ... a material or an apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, ... shall be liable as a contributory infringer."

COMPLAINT

79.     Contributory infringement – otherwise known as 'indirect infringement' or 'infringement by supply' includes Intel's actions of supplying the OEMs with Plaintiff's patented CPUs, that contribute (or potentially contribute) to the OEMs infringing Plaintiff's patented laptops and desktop PCs; even if those actions do not directly infringe the patent.

80.     Upon information and belief, Intel has continued to make, offer for sale, and sell Plaintiff's central processing units (CPUs); and, has continued to use Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) devices i.e., new and improved laptops and desktop PCs, to generate profits, without a license or authorization to do so.

81.     Plaintiff's "anticompetitive" clams involving intellectual property are brought under Section 1 and Section 2 of the Sherman Act, Section 3 of the Clayton Act, and Section 5 of the Federal Trade Commission (FTC) Act.

82.     The CPU is the Central Processing Unit which is responsible for carrying out the instructions of a computer program [operating systems (android), contain and manage all the programs and applications that a computer is able to run, which means managing the device's software and hardware functions], by performing the basic arithmetical, logical, and input/output operations of the system.

83.     After the doctrine of contributory infringement developed in the courts, Intel found ways to use it to extend their patent monopolies beyond the scope of their patents. This was accomplished primarily through contributing to the alleged infringing products of the OEMs.

84.     In *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018), the Federal Circuit expressly stated: "'the Federal Rules of Civil Procedure do not require a plaintiff to plead

COMPLAINT

facts establishing that each element of an asserted claim is met.'" *Id. at 1350* (quoting *In re Bill of Lading,* 681 F.3d 1323, 1339 (Fed. Cir. 2012) (emphasis added). *Nalco* appears to hold that element-by-element allegations are unnecessary.

85.     In my e-mail correspondence with Intel on June 16, Plaintiff offered Intel a reasonable settlement **(Exhibit I)**: "I offered you a licensing agreement to ensure you received something in exchange for accepting my offer. The amount I quoted you does not include the potential liability Intel could face for unjustly enriching itself to the tune of hundreds of billions of dollars for <u>using</u> my patented CMDC devices (i.e., laptops; desktop PCs. etc.); and, for offering for sale, and selling my patented CPUs designed for use with my CMDC devices; and, for illegally forming a monopoly with my intellectual property, after receiving [my] first notice in December, 2010." A copy of the related complaint against Qualcomm was attached to the e-mail and is included with this complaint as **(Exhibit J)**

86.     In the e-mail Plaintiff informed Intel that according to Statista, "Intel's net revenue from 2011 to 2021 is $693.07B." https://www.statista.com/statistics/263559/intels-net-revenue-since-1999/ Plaintiff included the stats to demonstrate that the $1B Plaintiff was willing to settle for is estimated at 1/7 of 1% of Intel's net revenue from 2011 to 2021 is $693.07B. Less than ½ of a penny on the dollar.

87.     In the e-mail Plaintiff also informed Intel of a potential damage estimate. "If I am only awarded $10B in damages. That's 10 times more than the $1B I am asking for. If the damages are triple ($30B), that's 30 times more than what I am asking for. The only reason something like this could happen, is Intel's pride won't allow them to negotiate in good faith with someone like me."

COMPLAINT

88.     The Clayton Act authorizes Plaintiff to sue for triple damages when Plaintiff have

been harmed or injured by conduct that violates either the Sherman or Clayton Act and to obtain

a court order prohibiting the anticompetitive practice in the future.


## SUMMARY

| (Exhibit A): Dec. 2010 "Notice" Letter Disclosures | Illustrative Charts | Patent Claims | Written Support - Patent Specifications |
|---|---|---|---|
| Laptops / Desktops | Laptops / Desktops Pgs. 9, 26 of Complaint | Claim(s) 13 of the "439 Patent | Yes |
| CPU | CPU Pgs. 10, 20, 26-28 of Complaint | Claim(s) 5 of the "287 Patent | Yes |
| Stall, Stop, Vehicle Slowdown | Mobileye - ADAS Pgs. 24-25 of Complaint | Claim(s) 44-53, 55 of the "891 Patent | Yes |
| Detection Systems | Detection of 10 hazardous chemicals Pg. 23 of Complaint | Claim(s) 4 of the "287 Patent | Yes |
| Biometric Fingerprint | Biometric Fingerprint Scanners Pg. 26 of Complaint | Claim(s) 1 of the "189 Patent | Yes |
| Radio Frequency Connection | Radio Frequency Near-Field Communication Pg. 27 of Complaint | Claim(s) 22 of the "439 Patent | Yes |
| Internet Connection | Internet of Things (IoTs) Pg. 28 of Complaint | Claim(s) 11 of the "619 Patent | Yes |

COMPLAINT

# **RELIEF**

A. Temporary injunctive relief for Intel to discontinue the making, offering for sale, and selling of its central processing units (CPUs) for laptops, desktop PCs, and Advanced Driver Assistance Systems (ADAS) for autonomous and driverless vehicles

B. Temporary injunctive relief for Intel to discontinue the use Plaintiff's patented Communicating, Monitoring, Detecting, and Controlling (CMDC) devices (i.e., new and improved laptops and desktop PCs) that are currently being used, without authorization, by Intel to generate revenues.

C. Summary judgement on the merits of the case for willful infringement; direct infringement; induced infringement; contributory infringement; divided infringement; and, infringement under the *doctrine of equivalents.*

D. Damages found or assessed for willful infringement; direct infringement; induced infringement; contributory infringement; divided infringement; and, infringement under the *doctrine of equivalents.*

E. Damages up to three times the amount found or assessed for willful contributory infringement.

F. Summary judgement on the merits of the case for Intel's single-firm anticompetitive conduct (under section 2 of the Sherman Act), and unjust enrichment.

G. Damages found or assessed for Intel's single-firm anticompetitive conduct (under Section 2 of the Sherman Act), that has cause Antitrust injury to the Plaintiff, and that harms the competitive process and thereby harms consumers.

H. Trible damages for the Antitrust injury imposed by Intel for violating Federal Antitrust Laws (Section 4 of the Clayton Act, 15 U.S.C.S. § 15, provides that "any person who

COMPLAINT

shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue" for treble damages, prejudgment interest, and costs of suit, including attorney fees.

I.   The Court orders Intel to establish, at minimum, a $20 billion dollar reserve with the SEC for "Probability of the Incurrence of a Loss". The reserve is returned to Intel if found not liable.

Intel has announced that it plans to acquire the autonomous car hardware firm Mobileye for a cool $15 billion. Intel's $15 Billion Mobileye Buyout Puts It in the Autonomous Car Driver's Seat https://www.technologyreview.com/2017/03/13/106275/intels-15-billion-mobileye-buyout-puts-it-in-the-autonomous-car-drivers-seat/

[T]his is where Intel, the American company that helped build Silicon Valley, is going to build its $20 billion semiconductor mega site. Intel's CEO, Pat Gelsinger, who is here tonight, told me they are ready to increase their investment from $20 billion to $100 billion. *Remarks of President Joe Biden – State of the Union Address as Prepared for Delivery. MARCH 01, 2022*

COMPLAINT

Sincerely,

Larry Golden, *Pro Se* Plaintiff

740 Woodruff Rd., #1102

Greenville, SC 29607

(H) 8642885605

(M) 8649927104

Email: atpg-tech@charter.net

COMPLAINT

# SERVICE OF PROCESS

Intel Corporation

2200 Mission College Blvd,

Santa Clara, CA 95054

COMPLAINT

ADRMOP,APPEAL,CLOSED,CONSENT,ProSe

# U.S. District Court
## California Northern District (San Jose)
## CIVIL DOCKET FOR CASE #: 5:22-cv-03828-NC

Golden v. Intel Corporation
Assigned to: Magistrate Judge Nathanael M. Cousins
Demand: $20,000,000
Case in other court:  USFC, 23-01257
Cause: 28:1332 Diversity-Other Contract

Date Filed: 06/28/2022
Date Terminated: 11/22/2022
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

**Plaintiff**

**Larry Golden**                              represented by   **Larry Golden**
                                                               740 Woodruff Rd., #1102
                                                               Greenville, SC 29607
                                                               864-288-5605
                                                               PRO SE

V.

**Defendant**

**Intel Corporation**                         represented by   **Richard Tyler Atkinson**
                                                               McManis Faulkner
                                                               50 West San Fernando Street, 10th Floor
                                                               San Jose, CA 95113
                                                               (408) 279-8700
                                                               Fax: (408) 279-3244
                                                               Email: tatkinson@mcmanislaw.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Hilary Lauren Weddell**
                                                               McManis Faulkner
                                                               50 W. San Fernando Street
                                                               10th Floor
                                                               San Jose, CA 95113
                                                               408-279-8700
                                                               Fax: 408-279-3244
                                                               Email: hweddell@mcmanislaw.com
                                                               *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/16/2022 | 34 | USFC Case Number 2023-1257 for 33 Notice of Appeal to the Federal Circuit filed by Larry Golden. (hdj, COURT STAFF) (Filed on 12/16/2022) (Entered: 12/16/2022) |

SAppx046

| 12/06/2022 | 33 | NOTICE OF APPEAL to the Federal Circuit as to 31 Order on Motion to Dismiss, by Larry Golden. Receipt #54611018926, $505.00. (Attachments: # 1 Receipt)(wsn, COURT STAFF) (Filed on 12/6/2022) (Entered: 12/06/2022) |
|---|---|---|
| 11/22/2022 | 32 | **JUDGMENT entered in favor of Defendant. ***Civil Case Terminated. Signed by Judge Nathanael M. Cousins on 11/22/2022. (lmh, COURT STAFF) (Filed on 11/22/2022)** |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) |
| | | (Entered: 11/22/2022) |
| 11/22/2022 | 31 | **ORDER GRANTING Motion to Dismiss. Re: ECF 7 . Signed by Judge Nathanael M. Cousins. (lmh, COURT STAFF) (Filed on 11/22/2022)** |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) |
| | | (Entered: 11/22/2022) |
| 11/22/2022 | 30 | OPPOSITION/RESPONSE (re 27 MOTION for Permanent Injunction ) filed byIntel Corporation. (Atkinson, Richard) (Filed on 11/22/2022) (Entered: 11/22/2022) |
| 11/10/2022 | 29 | CLERK'S NOTICE CONTINUING Initial Case Management Conference set for 11/16/2022, to 12/21/2022, at 10:00 AM by telephone. Case Management Statement due by 12/14/2022. |
| | | *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (lmh, COURT STAFF) (Filed on 11/10/2022) |
| | | Plaintiff has been served as a courtesy via email. |
| | | (Entered: 11/10/2022) |
| 11/09/2022 | 28 | CASE MANAGEMENT STATEMENT *Defendant's Case Management Conference Statement* filed by Intel Corporation. (Weddell, Hilary) (Filed on 11/9/2022) (Entered: 11/09/2022) |
| 11/08/2022 | 27 | MOTION for Permanent Injunction filed by Larry Golden. Responses due by 11/22/2022. Replies due by 11/29/2022. (hdj, COURT STAFF) (Filed on 11/8/2022) (Entered: 11/09/2022) |
| 11/08/2022 | 26 | CASE MANAGEMENT STATEMENT filed by Larry Golden. (Attachments: # 1 Envelope)(hdj, COURT STAFF) (Filed on 11/8/2022) (Entered: 11/09/2022) |
| 10/28/2022 | 25 | CLERK'S NOTICE VACATING hearing re: Defendant's Motion to Dismiss, Dkt. 7, scheduled for 11/2/2022, at 01:00 PM. The Court finds the motion suitable for decision without oral argument. |
| | | (lmh, COURT STAFF) (Filed on 10/28/2022) |
| | | Plaintiff has been served as a courtesy via email. |
| | | (Entered: 10/28/2022) |
| 10/12/2022 | 24 | REPLY (re 7 MOTION to Dismiss ) filed byIntel Corporation. (Atkinson, Richard) (Filed on 10/12/2022) (Entered: 10/12/2022) |
| 10/11/2022 | 23 | OBJECTIONS to Motion to Strike by Larry Golden. (hdj, COURT STAFF) (Filed on 10/11/2022) (Entered: 10/11/2022) |

SAppx047

| 09/30/2022 | 22 | OBJECTIONS to re 21 Opposition/Response to Motion, *OBJECTION AND MOTION TO STRIKE PLAINTIFF'S RESPONSE TO INTEL CORPORATION'S MOTION TO DISMISS AND CROSS MOTION FOR SUMMARY JUDGMENT* by Intel Corporation. (Atkinson, Richard) (Filed on 9/30/2022) (Entered: 09/30/2022) |
|---|---|---|
| 09/27/2022 | 21 | OPPOSITION/RESPONSE (re 7 MOTION to Dismiss ) filed byLarry Golden. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Envelope)(hdj, COURT STAFF) (Filed on 9/27/2022) (Entered: 09/28/2022) |
| 09/14/2022 | 20 | **ORDER GRANTING Intel's Motion to Strike, ECF 15 , and GRANTING Golden's Motion to Reschedule Hearing, ECF 13 . Golden is granted permission to file a single brief, not to exceed 25 pages, by 9/28/2022. Intel must reply by 10/12/2022. Hearing on cross-motion for summary judgment is rescheduled to 11/2/2022, at 01:00 PM by Zoom webinar. Initial Case Management Conference set for 9/28/2022, is continued to 11/16/2022, at 10:00 AM by telephone. Joint case management statement is due 11/9/2022. Signed by Judge Nathanael M. Cousins on 9/14/2022.** (lmh, COURT STAFF) (Filed on 9/14/2022) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) |
| | | (Entered: 09/14/2022) |
| 09/13/2022 | 19 | RESPONSE re 15 Objection by Larry Golden. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Envelope)(hdj, COURT STAFF) (Filed on 9/13/2022) (Entered: 09/14/2022) |
| 09/07/2022 | 17 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Atkinson, Richard) (Filed on 9/7/2022) (Entered: 09/07/2022) |
| 09/06/2022 | 16 | CLERK'S NOTICE Re: 15 Motion to Strike. Plaintiff is ordered to file a response to Defendant's motion by 9/13/2022. No reply without further leave of court. |
| | | (lmh, COURT STAFF) (Filed on 9/6/2022) |
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) |
| | | (Entered: 09/06/2022) |
| 09/06/2022 | 15 | OBJECTIONS to re 13 Opposition/Response to Motion by Intel Corporation. (Attachments: # 1 Certificate/Proof of Service)(Atkinson, Richard) (Filed on 9/6/2022) (Entered: 09/06/2022) |
| 09/01/2022 | 18 | OPPOSITION/RESPONSE (re 7 MOTION to Dismiss ) and Cross Motion for Summary Judgment filed byLarry Golden. (Attachments: # 1 Envelope)(hdj, COURT STAFF) (Filed on 9/1/2022) (Entered: 09/07/2022) |
| 09/01/2022 | 14 | MOTION to Reschedule Hearing and Proposed Order filed by Larry Golden. (hdj, COURT STAFF) (Filed on 9/1/2022) (Additional attachment(s) added on 9/1/2022: # 1 Envelope, # 2 letter) (hdj, COURT STAFF). (Entered: 09/01/2022) |
| 09/01/2022 | 13 | OPPOSITION/RESPONSE (re 7 MOTION to Dismiss ) filed byLarry Golden. (hdj, COURT STAFF) (Filed on 9/1/2022) (Additional attachment(s) added on 9/1/2022: # 1 Exhibit, # 2 Exhibit) (hdj, COURT STAFF). (Entered: 09/01/2022) |
| 09/01/2022 | 12 | CLERK'S NOTICE RE DOCKET NO. 30 IN CASE NO. 22-cv-3282-HSG. The Court has reviewed the motion and determined that no cases are related and no reassignments shall occur. (ndr, COURT STAFF) (Filed on 9/1/2022) |

SAppx048

| | | |
|---|---|---|
| | | Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF) (Entered: 09/01/2022) |
| 08/11/2022 | 11 | EXHIBIT D filed byLarry Golden. (mcl, COURT STAFF) (Filed on 8/11/2022) (Entered: 08/11/2022) |
| 08/11/2022 | 10 | EXHIBITS C filed byLarry Golden. (mcl, COURT STAFF) (Filed on 8/11/2022) (Additional attachment(s) added on 8/11/2022: # 1 Part 2) (mcl, COURT STAFF). (Additional attachment(s) added on 8/11/2022: # 2 Part 3) (mcl, COURT STAFF). (Additional attachment(s) added on 8/11/2022: # 3 Part 4) (mcl, COURT STAFF). (Additional attachment(s) added on 8/11/2022: # 4 Part 5) (mcl, COURT STAFF). (Additional attachment(s) added on 8/11/2022: # 5 Part 6) (mcl, COURT STAFF). (Entered: 08/11/2022) |
| 08/02/2022 | 9 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Intel Corporation.. (Atkinson, Richard) (Filed on 8/2/2022) (Entered: 08/02/2022) |
| 08/02/2022 | 8 | Request for Judicial Notice re 7 MOTION to Dismiss filed byIntel Corporation. (Related document(s) 7 ) (Atkinson, Richard) (Filed on 8/2/2022) (Entered: 08/02/2022) |
| 08/02/2022 | 7 | MOTION to Dismiss filed by Intel Corporation. Motion Hearing set for 9/21/2022 01:00 PM in San Jose, Courtroom 5, 4th Floor before Magistrate Judge Nathanael M. Cousins. Responses due by 8/16/2022. Replies due by 8/23/2022. (Attachments: # 1 Declaration of Tyler Atkinson, # 2 Certificate/Proof of Service)(Atkinson, Richard) (Filed on 8/2/2022) (Entered: 08/02/2022) |
| 07/19/2022 | 6 | CERTIFICATE OF SERVICE by Larry Golden (Attachments: # 1 Envelope)(hdj, COURT STAFF) (Filed on 7/19/2022) (Entered: 07/20/2022) |
| 07/07/2022 | 5 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Larry Golden. (jhf, COURT STAFF) (Filed on 7/7/2022) (Entered: 07/07/2022) |
| 06/29/2022 | 4 | CLERK'S NOTICE RE: Consent or Declination. Plaintiff is requested to file a consent or declination to proceed before a magistrate judge by 7/13/2022. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms.<br><br>(lmh, COURT STAFF) (Filed on 6/29/2022)<br><br>Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)<br>(Entered: 06/29/2022) |
| 06/28/2022 | 3 | Summons Issued as to Intel Corporation. (hdj, COURT STAFF) (Filed on 6/28/2022) (Entered: 06/28/2022) |
| 06/28/2022 | 2 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 9/21/2022. Initial Case Management Conference set for 9/28/2022 10:00 AM in San Jose, Courtroom 4, 5th Floor. (hdj, COURT STAFF) (Filed on 6/28/2022)**<br><br>**Any non-CM/ECF Participants have been served by First Class Mail to the addresses of record listed on the Notice of Electronic Filing (NEF)**<br>**(Entered: 06/28/2022)** |
| 06/28/2022 | 1 | COMPLAINT against Intel Corporation (Filing fee $ 402-#54611018858.). Filed byLarry Golden. Consent/Declination due by 7/12/2022. (Attachments: # 1 Civil Cover Sheet, # 2 receipt, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(hdj, COURT STAFF) (Filed on |

SAppx049

6/28/2022) (Additional attachment(s) added on 7/7/2022: # 7 Exhibits A - D) (wsn, COURT STAFF). (Entered: 06/28/2022)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/27/2023 12:06:50 | | | |
| **PACER Login:** | mcmanisfaulkner | **Client Code:** | INTEL/2201013 |
| **Description:** | Docket Report | **Search Criteria:** | 5:22-cv-03828-NC |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

SAppx050

# CERTIFICATE OF SERVICE

I am employed in the County of Santa Clara, State of California. I am over the age of 18 and not a party to the within action; my business address is 50 West San Fernando Street, 10th Floor, San Jose, California 95113.  My email address is: lmoniz@mcmanislaw.com

On January 30, 2023, I served the foregoing document described as:

**1) APPELLEE INTEL CORPORATION'S ANSWERING BRIEF AND SUPPLEMENTAL APPENDIX**

**2) CERTIFICATE OF INTEREST**

on the parties in this action by placing a true copy(ies) or the original(s) thereof enclosed in a sealed envelope(s) addressed as follows:

Larry Golden                                                    Pro Se
740 Woodruff Rd., #1102
Greenville, SC 29607
864-288-5605

☒ **(BY FEDERAL EXPRESS)** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above or on the attached service list.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

Dated:  January 30, 2023                    /s/ *Lisa M. Moniz*
                                                             Lisa M. Moniz