FORM 17. Informal Reply Brief

Form 17 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### INFORMAL REPLY BRIEF OF PETITIONER/APPELLANT

Case Number: 23-1257

Short Case Caption: Golden v. Intel Corporation

Petitioner/Appellant: Larry Golden

---

**Instructions:** Read the Guide for Unrepresented Parties before completing this form. Answer the questions as best as you can. Attach additional pages as needed to answer the questions. This form and continuation pages may not exceed 15 pages.

You may attach other record material as an appendix. Any attached material should be referenced in answer to the below questions. Do not attach material already attached to your informal opening brief. Please redact (erase, cover, or otherwise make unreadable) social security numbers or comparable private personal identifiers that appear in any attachments you submit.

---

1. Have you received a copy of the respondent/appellee's response brief?
   ☑ Yes   ☐ No

   **STOP:** You may use this form to respond to arguments raised in the brief of respondent/appellee. If you have not received that brief, you may not file this form. **Do not proceed or file this form if you answered "No."**

2. What are your arguments in response to the respondent/appellee?

   The Trial Court Judge clear error of judgement is first, allowing Intel leave to present the evidence that fails under Fed. R. Evid. 403; and second, relying on the evidence to dismiss Plaintiff's Case No. 5: 22-cv-03828-NC. Defendant's 18-page motion to dismiss and 750-page declaration is evidence that fails under Fed. R. Evid. 403. The Trial Court Judge clear error of judgement is relying on needless cumulative evidence that fails under Fed. R. Evid. 403 because its probative value is substantially outweighed by a danger of "unfair prejudice". Intel has the "undue tendency to suggest a decision on an improper basis".

FORM 17.  Informal Reply Brief

3.  Are there other arguments you wish to make?  ☑ Yes  ☐ No
    If yes, please state them.

The Trial Court Judge clear error of judgement is introducing evidence whereby the probative value is substantially outweighed by a danger of confusing the issues; and, misleading. The Trial Court Judge is quoted as saying,  " Plaintiff refers to these patents as "CMDC patents,". Plaintiff has never referred to his  "CMDC devices" as "CMDC patents"... Those who are familiar with patents and patent law know that the invention is defined by the claims. The Trial Court Judge is correct, "Plaintiff does not plausibly allege he has a patent in Central Processing Units (CPUs), laptops, or any of the technology used by Intel". Plaintiff has always alleged he has patent claims that defines the subject matter and boundaries of his Central Processing Unit (CPU), and his new, improved upon, and useful laptop inventions. The Trial Court Judge erred in his claim construction analysis: "[I]n district courts' claim construction analyses, intrinsic evidence is of paramount importance. The Trial Court Judge Clear Error in Judgement: Its Failure to Recognized Plaintiff as the" person [] injured in his business or property by reason of anything forbidden in the antitrust laws" [Section 4 of the Clayton Act].

Date: 02/05/2023

Signature:

Name: Larry Golden

## MEMORANDUM REPLY BRIEF IN SUPPORT OF PLAINTIFF-APPELLANT'S INFORMAL COMPLAINT AND OBJECTION TO EVIDENCE PRESENTED BY DEFENDANT-APPELLEE THAT FAILS UNDER FED. R. EVID. 403.

Intel has devoted an enormous amount of time at the Trial Court level, and now in this appellate court to confusing the issues, wasting time, and needlessly presenting cumulative evidence that fails under Fed. R. Evid. 403. The Trial Court Judge clear error of judgement is first, allowing Intel leave to present the evidence that fails under Fed. R. Evid. 403; and second, relying on the evidence to dismiss Plaintiff's Case No. 5:22-cv-03828-NC. Defendant's 18-page motion to dismiss and 750-page declaration is evidence that fails under Fed. R. Evid. 403.

The Trial Court Judge clear error of judgement is relying on needless cumulative evidence that fails under Fed. R. Evid. 403. Examples of the cumulative evidence that fails under Fed. R. Evid. 403 because its probative value is substantially outweighed by a danger of "unfair prejudice", are:

"Plaintiff is a serial filer of *frivolous* complaints based on this alleged conspiracy as explained in the Motion to Dismiss ... Plaintiff has never made it past the pleading stage on any suit relating to this conspiracy and infringement of his patents, several of which have been dismissed as *frivolous* ... Whether or not the Court has subject matter jurisdiction based on the *frivolous* nature of the Plaintiff's Complaint ... The Court does not have subject matter jurisdiction over Plaintiff's *frivolous* claims, nor does Plaintiff have standing for his antitrust claim ... However, this case is Plaintiff's latest *frivolous* attempt to sue over his patents ... The Magistrate recommended that the complaint is subject to dismissal because the "claims appear patently *frivolous*" and fail to state a claim ... Plaintiff appealed to the Federal Circuit, which affirmed the decision to dismiss without prejudice on the basis of *frivolousness*—rather than duplicity ... The Magistrate recommended dismissal as *frivolous*, noting that ... the instant matter is subject to summary dismissal because the claims appear patently *frivolous* ... According to the Magistrate, "this action represents the plaintiff's attempt to re-litigate the claims from [Case 3] because although [that case] was dismissed as *frivolous* ... He again recommended dismissal of the case as *frivolous* ... the plaintiff's attempt to circumvent the prior dismissals of his patent infringement claims, the instant matter is subject to summary dismissal as *frivolous* ... The Magistrate recommended that the court dismiss the action with prejudice, and that the court sanction Mr. Golden $400 for continuing to file *frivolous* lawsuits before it ... The District Court agreed with the Magistrate that the complaint should be dismissed as *frivolous* ... Plaintiff was warned that if he "attempts to

file another *frivolous* action in this Court, the Court will consider the imposition of sanctions as warranted ... Plaintiff also admitted that his complaint was identical to a previous complaint rejected as *frivolous* ... [A]lthough the plaintiff has made allegations against a new alleged infringer, Google, his allegations are still *frivolous* and thus subject to summary dismissal ... such allegations may not be used in this action to circumvent prior rulings by this court that infringement allegations against Apple/Qualcomm are *frivolous* ... The court adopted the Magistrate's recommendation and "dismissed the case with prejudice because it is *frivolous*" and without service of process ... The district court had discounted the claim chart as being the same as a chart dismissed as *frivolous* when the Plaintiff had added content to the chart ... The district court also noted that "several other Courts have held that virtually the same patent claims at issue here are *frivolous* ... Leave to amend was denied as futile based on Plaintiff's history of filing *frivolous* suits ... Leave to amend was denied based on Plaintiff's nearly 10-year history of filing "*frivolous* claims (or some variation thereof) ... Plaintiff's litigations have been repeatedly dismissed, many of which were dismissed on the basis of *frivolousness*"

Intel has the "undue tendency to suggest a decision on an improper basis". Even after the three-judge panel's 'Opinion' at the Federal Circuit in *Larry Golden v. Google LLC;* CAFC Case No. 22-1267 "*[b]ut to the extent that the chart includes the 'exact same language' as previously rejected charts, it is simply the language of the independent claims being mapped to. The key column describing the infringing nature of the accused products is not the same as the complaint held frivolous in the 2019 case. It attempts—whether successfully or not—to map claim limitations to infringing product features, and it does so in a relatively straightforward manner ... We express no opinion as to the adequacy of the complaint or claim chart except that it is not facially frivolous*", Intel continues to mislead, misguide, and misinform the Trial Court that this case is about "frivolousness" and not about a violation of antitrust laws ["tying; forming and maintaining a monopoly] and patent infringement [willful; contributory; induced].

The Trial Court Judge clear error of judgement is the "omission of a material fact". The Trial Court Judge is quoted as saying in Case 5:22-cv-03828-NC Document 31 Filed 11/22/22 "Order to Dismiss", "[s]everal other Courts have held that virtually the same patent claims at issue here are frivolous. *Golden v. Google*, LLC, No. 21-cv-00244-JD-KFM, 2021 WL 5083804

(D.S.C. Nov. 2, 2021) (dismissing complaint as "frivolous")" ... "Golden here attempts to bring against Intel the same claims that have previously been dismissed against Google, Apple, and others."

The Trial Court Judge omitted the fact that, on appeal the Federal Circuit in *Larry Golden v. Google LLC*; CAFC Case No. 22-1267, vacated and remanded the Google case back to the District Court because the complaint and claim chart was not "facially frivolous", and the decision in the *Larry Golden v. Apple Inc.* CAFC Case No. 22-1229, was affirmed and dismissed "without prejudice" because Plaintiff fail to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Failure to allege enough facts does not make the facts alleged, frivolous.

Therefore, this Court well understands that Rule 403 provides for the exclusion of evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See, e.g., Cmty. Ass'n for Restoration of the Env't v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1216 (E.D. Wash. 2015).

The Trial Court Judge clear error of judgement is his failure to dismiss a case where Apple Inc., Cisco Systems, Inc., Google LLC, and Intel Corporation; Plaintiffs in NDC-San Jose Case No. 5:20-cv-06128, were clearly "serial filers" against the same company(s), in the same Court, and within a one-year time span. But yet, dismissed Plaintiff's case for that reason:

> "On the same day that *Fintiv* was designated as precedential, the Board applied the *NHK-Fintiv* rule to deny Intel's IPR petition in *Intel Corp. v. VLSI Technology LLC*, No. IPR2020-00106, 2020 WL 2201828 (P.T.A.B. May 5, 2020). The petition had been timely filed, but the Board concluded that the "advanced stage" of related district court litigation, overlap in the issues, and the timing of trial—which was scheduled to begin approximately seven months before IPR would have ended, but which was subsequently rescheduled—meant that IPR would have been "an inefficient use of Board, party, and judicial resources." *Id.* at *6."
> - *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00498, 2020 WL 4820595 (P.T.A.B. Aug. 19, 2020);

- *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00526, 2020 WL 4820610 (P.T.A.B. Aug. 18, 2020);
- *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00527, 2020 WL 4820610 (P.T.A.B. Aug. 18, 2020);
- *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00141, 2020 WL 3033208 (P.T.A.B. June 4, 2020);
- *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00142, 2020 WL 3033209 (P.T.A.B. June 4, 2020);
- *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00158, 2020 WL 2563448 (P.T.A.B. May 20, 2020);
- *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00112, 2020 WL 2544910 (P.T.A.B. May 19, 2020);
- *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00113, 2020 WL 2544912 (P.T.A.B. May 19, 2020);
- *Intel Corp. v. VLSI Tech. LLC*, No. IPR2020-00114, 2020 WL 2544917 (P.T.A.B. May 19, 2020).
- *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00407, 2020 WL 4680039 (P.T.A.B. Aug. 11, 2020);
- *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00408, 2020 WL 4680042 (P.T.A.B. Aug. 11, 2020);
- *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00409, 2020 WL 4680047 (P.T.A.B. Aug. 11, 2020);
- *Apple Inc. v. Maxell, Ltd.*, No. IPR2020-00203, 2020 WL 3662522 (P.T.A.B. July 6, 2020);
- *Google LLC v. Uniloc 2017, LLC*, No. IPR2020-00115, 2020 WL 1523248 (P.T.A.B. Mar. 27, 2020)

The Trial Court Judge clear error of judgement is dismissing Plaintiff's case because the case was "based on the same patents". When Plaintiff's patents were issued, they were issued with the presumption of validity, 35 U.S. Code § 282, which means Plaintiff does not have to prove in Court that his patents are valid. The burden rest with the Defense to prove that Plaintiff's patents are invalid.

Valid patents give Plaintiff the right to exclude others from making, using, offering for sell, or selling any product that is covered in Plaintiff's patents; who makes, uses, offer for sell, or sells the product(s) without authorization or license to do so. The only time the Trial Court Judge is allowed to dismiss a case at the onset "based on the same patents", is when Plaintiff introduce patents that has expired, or the patents or patent claims have been proven to be invalid.

The Trial Court Judge clear error of judgement is introducing evidence whereby the probative value is substantially outweighed by a danger of confusing the issues; and, misleading.

The Trial Court Judge is quoted as saying, "Plaintiff refers to these patents as "CMDC patents,". Plaintiff has never referred to his "CMDC devices" as "CMDC patents". Those who are familiar with patents and patent law know that the invention is defined by the claims.

Claim construction is based solely on the intrinsic record (as it often is under the *Phillips* framework), *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("We have viewed

extrinsic evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms, for several reasons."), the district court's claim construction is reviewed *de novo*, as it has been since Markman proceedings began. *Fenner Invs., Ltd. v. Cellco P'ship*, No. 778 F.3d 1320, 1322 (Fed. Cir. 2015) (citing *Teva*, 135 S. Ct. at 841); *see also Teva Pharm. USA Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) ("[W]hen the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law, and the Court of Appeals will review that construction *de novo*."); ; *Shire Dev. v. Watson Pharms.*, __ F.3d ___, 2015 WL 3483245, at *4 (Fed. Cir. 2015) ("In this case, we review the district court's constructions *de novo*, as the intrinsic evidence fully determines the proper constructions.").

The Trial Court Judge is also quoted as saying, "[a]lthough he insinuates otherwise, Golden does not plausibly allege he has a patent in Central Processing Units (CPUs), laptops, or any of the technology used by Intel. The patents themselves confirm that he does not".

The evidence the Trial Court presents here is very confusing and misleading. First, the Trial Court Judge is correct, "Plaintiff does not plausibly allege he has a patent in Central Processing Units (CPUs), laptops, or any of the technology used by Intel". Plaintiff has always alleged he has patent claims that defines the subject matter and boundaries of his Central Processing Unit (CPU), and his new, improved upon, and useful laptop inventions.

Second, only the patent claims define the exclusive right granted to the patent applicant; the rest of the patent is there to facilitate understanding of the claimed invention. In other words, the purpose of the claims is to define which subject-matter is protected by the patent.

Plaintiff has at least twenty-six (26) independent patent claims and twenty (20) dependent

patent claims the has been issued in Plaintiff's '497, '752' '189, '439, '287, & '619 patents, for

Plaintiff's Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e.,

smartphone and/or a new, improved upon, useful cell phone, laptop, tablet or PC) that has a

disclosure document filed with the USPTO on 11/26/2004, and a first-to-invent application date

of 04/05/2006 for Plaintiff's first patent (the '497 patent).

The Trial Court Judge erred in his claim construction analysis: "[I]n district courts' claim

construction analyses, intrinsic evidence is of paramount importance.  Although extrinsic

evidence "may be useful to the court," it is considered "less significant" than the claim language,

specification, and prosecution history making up the intrinsic record. *Phillips v. AWH Corp.*,

415 F.3d 1303, 1317 (Fed. Cir. 2005).  Further, when "an analysis of the intrinsic evidence alone

will resolve any ambiguity in a disputed claim term [,] . . . it is improper to rely on extrinsic

evidence." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

Therefore, the Trial Court Judge reliance on extrinsic evidence (evidence other than the intrinsic

evidence i.e., patent specifications and prosecution history), the evidence, fails under Fed. R.

Evid. 403.

Plaintiff's inventions are not limited to the single limitation or element of, "when

detection occurs a signal is sent to stall or stop the vehicle". The specifications below, that is

taken directly from Plaintiff's patents; is "written description" for Plaintiff's patented

Communicating, Monitoring, Detecting, and Controlling (CMDC) Device (i.e., smartphone

and/or a new, improved upon, useful cell phone, laptop, tablet or PC).

> "[E]ach detector can also be used as a manual, stand-alone hand-held scanner ...
> electrically interconnected to the sensor/detectors 176 via any standard microprocessor ...
> cell phone monitor 152 thus comprise a hand-held, easily portable and transportable
> detection means① ... includes a conventional microprocessor for controlling the various

functions and generating the appropriate signals for transmission to the cpu 40 ... includes a top 22, a bottom 24, a pair of opposed sides 26 and a front side or panel 28 and an opposite rear or back side 30 ... connections or contacts that can include an Internet connection 32, a GPS connection 34 and a power connection 36 for a power source ... as shown more specifically in FIG. 17, by way of a representative example the features and elements of the detector case 12 ... and associated cell phone monitor 152 ... [t]he cell phone monitor 152 includes the standard keypad functions 154 and more specialized system use (ring tone, email, photos, texting) functions 156 as well as a viewing screen 158 ... [t]he cell phone detector case 150 includes a recharging cradle or seat 160, a front side 162, a top 164, a bottom 166, and a pair of opposed sides 168 ... connections, contacts, and ports for at least an Internet connection 170, a GPS connection 172, and a contact, plug, or port for a power source 174 ... [t]he power source for the cell phone detector case 150 can be any conventional rechargeable battery source or standard electrical power from a standard electrical receptacle or outlet ... a fingerprint biometric lock with disabler❷ ... the fingerprint biometric lock with disabler for engaging and disengaging the fingerprint biometric lock as part of the process ... a fingerprint biometric lock with disabler 62 as shown in FIGS. 1 and 14 ... [t]he fingerprint biometric lock with disabler 62 is interconnected to the cpu 40 ... resetting of the fingerprint biometric lock with disabler 62 occurs when the fingerprint of the individual is placed on the fingerprint-matching pad 64, and if a match occurs with a known fingerprint stored by the cpu 40, then the individual can reset the fingerprint biometric lock with disabler 56 ... the monitoring equipment activates a stall-to-stop process for disabling the air, fuel, electrical and/or computer system of the vehicle ... products grouped together by common features in several product groupings such as design similarity ... the following types of indicators: a sound alarm indicator 178, a readings panel 180, a sensor 182 for detecting one or more specific types of agents, elements, chemicals, compounds, etc., and a light alarm indicator 184 ... incorporated with cell phone towers and satellites for use with satellite communication and/or a cell tower, wi-fi, wi-max, broadband, GPS, navigation, radio frequency interconnected to a central processing unit (cpu), such as cpu 40, or a transceiver and monitoring equipment to include but not to be limited to computers, laptops, notebooks, PC's, and cell phones for the receipt and transmission of signals therebetween ... [t]he aforementioned telecommunication and radio communication means can be interactive with any type of motive vehicle that includes but is not limited to cars, trucks, vans, SUVs, trains, subways, boats, ships and airplanes, and which is reported stolen, experiences a loss of brakes❸ ..."

Nor, is Plaintiff's invention limited to what is claimed in the title of Plaintiff's patents,

"[t]hese patents are formally entitled, "multi sensor detection① and lock disabling system❷"

and "multi sensor detection, stall to stop❸ and lock disabling system." ECF 7-1, Atkinson Decl.,

¶¶ 18-24, Exhs. Q through W (the patents at issue)." The numbers ①②&③ align with the numbers ①②&③ in the specifications for the CMDC device(s), above.

The Trial Court Judge clear error of judgement occurred when the Trial Court presented evidence, that fails under Fed. R. Evid. 403, for patent-eligibility under section 101 and dismissed Plaintiff's complaint.

The Trial Court Judge raised patent-eligibility under Section 101 in its Opinion "'Golden does not plausibly allege he has a patent in Central Processing Units (CPUs), laptops, or any of the technology used by Intel'… [t]he patents themselves confirm that he does not … the same patent claims at issue here are frivolous … Golden has not stated a claim for direct or contributory patent infringement…"

> "35 U.S. Code § 101 - Inventions patentable: Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

The question of "does the presumption of patent validity under 35 U.S.C. § 282 also include or require a presumption that claims are patent-eligible under Section 101? This question was answered on June 25, 2019, in *Cellspin Soft v. Fitbit*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), the Federal Circuit addressed the issue in a unanimous and precedential decision, clarifying that issued U.S. patents should indeed be accorded a presumption of eligibility.

When it comes to Plaintiff's utility patents, the Trial Court Judge can't just eyeball it. The Trial Court Judge must go to the claims and perform a detailed technical analysis.

A patent gives the Patent Owner (PO) the right to exclude others from using, selling, manufacturing the invention. There's a certain hierarchy in utility patent claims that requires training in order to understand the coverage [this task is best performed by the patent examiners at the USPTO], and then compare the coverage to an accused product [this task is best performed

by skilled patent litigation attorneys]. A patent claim defines the subject matter that is sought to be protected, and the boundaries of an invention; lays down what the patent does/does not cover.

On October 1, 2015, the three-judge panel of Green, Tornquist, and Cherry in the case of *United States Department of Homeland Security, v. Larry Golden*, IPR Final Written Decision. Case No. IPR2014-00714 Trials@uspto.gov, decided cell phones, smart phones, desktops, handhelds, PDAs, laptops, or computer terminals are *'species'* of the claim(s) *'genus'* "communication devices".

> "[a]communication device of at least one of *a cell phone a smart phone a desktop, a handheld, a PDA, a laptop, or a computer terminal...*" "[P]atent Owner contends that this [] language is consistent with words found in the disclosure of the '118 application ..." "[t]he specific devices [] such as the cell phones and smart phones would be recognized by one of ordinary skill in the art as a type of communication device or monitoring equipment because cell phones and smartphones are devices that are capable of communication and are capable of receiving signals"... "[a]s Patent Owner explains, the added language is [] intended to reflect the entire genus of "monitoring equipment" and "communications devices" ... "the claim has been broadened to not only include the listed species that have been removed, but anything falling within the claimed genus."

Throughout Plaintiff's pleadings, Plaintiff methodically makes a comparison of the patents and patent claims [claims 5, 23, & 1 of the '287, '439, & '189 patents] asserted in *Larry Golden v. Google LLC*; CAFC Case No. 22-1267, Filed 09/08/22, to the alleged infringing communication devices *'used'* by Intel; the alleged infringing central processing units (CPUs) Intel *'contributes'* to the alleged infringing communication devices; and, the alleged infringing central processing units (CPUs) Intel *'ties'* to Intel's chipsets, or SoCs. In the *OPINION*:

> "Mr. Golden's complaint includes a detailed claim chart mapping features of an accused product, the Google Pixel 5 Smartphone, to independent claims from U.S. Patent Nos. 10,163,287, 9,589,439, and 9,069,189 ... to map claim limitations to infringing product features, and it does so in a relatively straightforward manner ... Mr. Golden has made efforts to identify exactly how the accused products meet the limitations of his claims ..."

The Trial Court Judge Clear Error in Judgement: Its Failure to Recognized Plaintiff as the "person [] injured in his business or property by reason of anything forbidden in the antitrust laws" [Section 4 of the Clayton Act].

Section 4 of the Clayton Act 1914 allows the recovery of damages by "any person injured in his business or property by reason of anything forbidden in the antitrust laws" (Section 4, Clayton Act). The Act entitles a successful private claimant to an award of triple damages and costs (Section 4, Clayton Act). "Antitrust laws" includes:

- The Sherman Act 1890, which prohibits conspiracies and monopolization.

- Sections of the Robinson-Patman Act 1936, which prohibits discriminatory pricing (amending sections 13, 13a, 13b and 21, Clayton Act).

- "Any person" includes: Individuals. Partnerships. Corporations

Plaintiff has stated a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1 by alleging an agreement between Intel and Qualcomm that violates Section 1 of the Sherman Act, 15 U.S.C. § 1. Cf. Cal. *Dental Ass'n v. FTC*, 526 U.S. 756, 762 n.3 (1999).

Plaintiff has stated a claim under Section 2 of the Sherman Act, 15 U.S.C. § 2 by alleging unilateral conduct that constitutes monopolization (provisions apply only to firms that already possess monopoly power or have a dangerous probability of achieving monopoly power) as a result of Intel's unlawful "*use*" of products covered in Plaintiff's patents.

"The offense of monopolization has two elements: '(1) the possession of monopoly power in the relevant market and (2) the *willful* acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *United States v. Microsoft Corp.*, 253 F.3d 34, 50 (D.C. Cir. 2001) (en banc) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)).

Intel was knowledgeable of Plaintiff's communicating, monitoring, detecting, and controlling (CMDC) devices, and CPUs dating back to 12/2010:

> On 12/16/2010: Plaintiff's notice letters and licensing offer was mailed U.S. Postal Service, Certified Mail to Mr. Paul S. Otellini, President & CEO Intel, and Mr. Curt J. Nichols, VP Intel Capital Intel, at Mission College Blvd., Santa Clara, CA 95054-1549. Intel received and signed for the letters 12/20/2010. Phone: 408-765-8080. Tracking Nos: 7010 1870 0002 0193 0360 and 7010 1870 0002 0193 0377. (Filed in this Case 5:22-cv-03828-NC, at Dkt. 1-7; filed 06/28/22 and Dkt. 21; filed 09/27/22)

Intel was aware that the "*use*" of any products that allegedly infringes Plaintiff's patented CMDC devices i.e., new, improved upon, and useful, desktop PCs, laptops, tablets, cell phones, etc., without license or authorization from Plaintiff, to generate hundreds of billions of dollars in revenue, is in violation of 35 U.S. Code § 271(a):

> "Except as otherwise provided in this title, whoever without authority makes, *uses*, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

Intel was aware that the "*offer to sell, or sell*" any products that allegedly infringes Plaintiff's patented central processing units (CPUs), without license or authorization from Plaintiff, to generate hundreds of billions in revenue, is in violation of 35 U.S. Code § 271(a):

> "Except as otherwise provided in this title, whoever without authority makes, *uses*, *offers to sell, or sells* any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

Intel was aware that whoever offers to sell, or sells "*an apparatus [i.e., central processing unit (CPU)] for use in practicing Plaintiff's patented process, constituting a material part of Plaintiff's invention*", without license or authorization from the Plaintiff, to generate hundreds of billions of dollars in revenue, is in violation of 35 U.S. Code § 271(c):

"Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, *knowing the same to be especially made or especially adapted for use in an infringement of such patent*, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

This Court well understands that Rule 403 provides for the exclusion of evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See, e.g., Cmty. Ass'n for Restoration of the Env't v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1216 (E.D. Wash. 2015).

In particular, the Ninth Circuit and this Court have repeatedly recognized that "Rule 403 is concerned with unfairly prejudicial evidence," that is, evidence that "has an undue tendency to suggest a decision on an improper basis such as emotion or character rather than evidence presented." *United States v. Shields*, 2016 U.S. App. LEXIS, at *4 (9th Cir. Dec. 21, 2016) (quoting *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991)); *see also United States v. Henrikson*, 2015 U.S. Dist. LEXIS 170829, *9- 11 (E.D. Wash. Dec. 22, 2015) (citing *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013)) ("Unfair prejudice is the undue tendency to suggest a decision on an improper basis, commonly, [] an emotional one.").

Thus, the Ninth Circuit has emphasized that Rule 403 requires that evidence be excluded as irrelevant where it has "scant or cumulative probative force, [which is] dragged in by the heels for the sake of its prejudicial effect." *United States v. Plascencia-Orozco*, 852 F.3d 910, 926 (9th Cir. 2017); *see also Wetmore v. Gardner*, 735 F. Supp. 974, 983 (E.D. Wash. 1990) (citing *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)) (same). Specifically, evidence

should be excluded when "there is a significant danger that the jury [or judge] might base its decision on emotion or when non-party events would distract reasonable jurors [judges] from the real issues in a case." *United States v. Whittemore*, 2013 U.S. Dist. LEXIS 67636, at *7 (D. Nev. May 10, 2013) (citing *Tennison v. Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001), and *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985)).

The cumulative evidence clause permits a court to bar admission of evidence where its probative value is substantially outweighed by the risk of needlessly presenting cumulative evidence, Fed. R. Evid. 403. The clause finds its roots in common law authority. *See* 22A Kenneth W. Graham, Jr., Federal Practice and Procedure § 5220 (2d ed. 2017) ("[T]he doctrine apparently existed at common law …"). Observing the dangers that the cumulative evidence clause seeks to mitigate. In essence, it provides a judicial safety valve by which a party's attempt to admit excessive evidence in support of the same proposition can be cut short.

Sincerely,

Date: *February 6, 2023*

*Larry Golden*

Larry Golden, *Pro Se* Plaintiff
740 Woodruff Rd., #1102
Greenville, SC 29607
(H) 8642885605
(M) 8649927104
Email: atpg-tech@charter.net

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 6th day of February, 2023, a true and correct copy of the foregoing "Memorandum Reply in Support of Plaintiff-Appellant's Informal Complaint and Objection to Evidence Presented by Defendant-Appellee that fails Under Fed. R. Evid. 403", was served upon the following Defendant by priority "express" mail:

Richard Tyler Atkinson

McManis Faulkner

50 West San Fernando Street, 10th Floor

San Jose, CA 95113

Phone: (408) 279-8700

Fax: (408) 279-3244

Email: tatkinson@mcmanislaw.com

Larry Golden, Pro Se

740 Woodruff Rd., #1102

Greenville, South Carolina 29607

atpg-tech@charter.net

864-288-5605

Case: 23-1257    Document: 15    Page: 17    Filed: 02/07/2023

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)    PHONE 864 288-5605

LARRY GOLDEN
740 WOODRUFF RD. #1102
GREENVILLE, SC 29607

EL 624221833 US

UNITED STATES
POSTAL SERVICE ®

PRIORITY
★ MAIL ★
EXPRESS™

**PAYMENT BY ACCOUNT (if applicable)**

USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**

☒ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE 202 275-8000

U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT
CASE NO: 23-1257
717 MADISON PLACE, NW
WASHINGTON, DC

ZIP + 4® (U.S. ADDRESSES ONLY)

2 0 4 3 9 - _ _ _ _

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

**ORIGIN (POSTAL SERVICE USE ONLY)**

☒ 1-Day    ☐ 2-Day    ☐ Military    ☐ DPO

PO ZIP Code: 29615

Scheduled Delivery Date (MM/DD/YY): 2-7-23

Postage: $ 28.75

Date Accepted (MM/DD/YY): 2-6-23

Scheduled Delivery Time: ☐ 10:30 AM; ☐ 3:00 PM ☐ 12:00 NOON 6:00pm

Insurance Fee: $

COD Fee: $

Time Accepted: 10:10 ☐ AM ☐ PM

10:30 AM Delivery Fee: $

Return Receipt Fee: $

Live Animal Transportation Fee: $

Special Handling/Fragile: $

Sunday/Holiday Premium Fee: $

Total Postage & Fees: 28.75

Weight: ☒ Flat Rate ___ lbs. 5 ozs.

Acceptance Employee Initials: B

$

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY) | Time | Employee Signature
| | ☐ AM ☐ PM |

Delivery Attempt (MM/DD/YY) | Time | Employee Signature
| | ☐ AM ☐ PM |

LABEL 11-B, OCTOBER 2016    PSN 7690-02-000-9996    1-ORIGIN POST OFFICE COPY